[Cite as *State v. Lampley*, 2012-Ohio-4071.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J.<br>Hon. Julie A. Edwards, J. |
| -vs- | |
| | Case No. 10CA30 |
| THOMAS LAMPLEY | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from Richland County Court of
                             Common Pleas, Case No. 09-CR-650D

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      September 5, 2012

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

JAMES J. MAYER, JR.                         OFFICE OF THE PUBLIC DEFENDER
PROSECUTING ATTORNEY                        MELISSA M. PRENDERGAST
RICHLAND COUNTY, OHIO                       Assistant State Public Defender
                                            250 East Broad Street, Suite 1400
BY: JILL M. COCHRAN                         Columbus, Ohio 43215
Assistant Richland County Prosecutor
38 South Park Street
Mansfield, Ohio 44902

*Hoffman, P.J.*

{¶1} Defendant-appellant Thomas Lampley appeals his conviction entered by the Richland County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On August 28, 2009, Appellant was employed at the Mary McLeod Bethune Center ("MBCC") owned by his wife. On that day, Appellant and his wife became involved in an argument, during which Appellant operated a vehicle in the MBCC parking lot coming close to and almost hitting LaShona Bronson who was also an employee of MBCC and an acquaintance of Appellant. A dispute then arose between Bronson and Appellant as to how close Appellant was to hitting her, and Appellant called Bronson a "bitch." Bronson telephoned her husband, David Jermain Bronson, aka J.B. Bronson. She then told Appellant "We going to have somebody to take care of you" and "We got something for you." J.B. subsequently came to the parking lot, but Appellant had already left the scene.

{¶3} When Appellant returned to the MBCC parking lot, he encountered LaShona Bronson and her husband, J.B., who approached Appellant at the vehicle Appellant was driving. An altercation ensued. Appellant maintains J.B. approached the vehicle and began striking Appellant through the open window. J.B.'s friend, Danny McClain, had accompanied J.B. to the parking lot, and was outside the vehicle on the driver's side. Appellant accessed a firearm stored in the MBCC's van, and used the firearm to shoot and fatally wound J.B.

{¶4} Appellant was indicted by the Richland County Grand Jury on four counts: murder, in violation of R.C. 2903.02(A), with a firearm specification; murder, in violation

of R.C. 2903.02(B), with a firearm specification; having a weapon under disability, in violation of R.C. 2923.13(A)(2); and tampering with evidence, in violation of R.C. 2921.12(A)(1).

{¶5}   A jury trial commenced on February 23, 2010, and the jury returned a verdict of guilty on all four counts. The jury also returned a finding of guilt on the firearm specifications.

{¶6}   The trial court imposed a sentence of fifteen years to life imprisonment on count one, merging counts one and two. The court also imposed a five year sentence on count three and a two year sentence on count four, to be served consecutively. An additional three year mandatory consecutive prison sentence was imposed for the firearm specifications, for a total sentence of twenty-five years to life.

{¶7}   On March 10, 2010, Appellant filed a notice of appeal with this court in Case No. 10–CA–30. Subsequently, on April 26, 2010, Appellant filed a petition to vacate or set aside his sentence in the trial court.

{¶8}   On August 10, 2010, the trial court overruled Appellant's petition for post-conviction relief. On October 29, 2010, this Court dismissed Appellant's direct appeal for failure to prosecute because Appellant failed to submit a brief.

{¶9}   Appellant appealed the trial court's August 10, 2010 denial of his motion for post-conviction relief. Via Judgment Entry of March 9, 2011, this Court affirmed the trial court's denial of the motion for post-conviction relief. *State v. Lampley*, Richland App. No. 10CA30, 2011-Ohio-3814.

{¶10} On December 9, 2011, this Court granted Appellant's application to reopen the direct appeal finding Appellant's appellate counsel was ineffective in failing

to raise a potentially meritorious claim. This Court reopened Appellant's appeal for the limited purpose of considering whether trial counsel was ineffective in failing to request a jury instruction on the Castle Doctrine, as codified in R.C. 2901.05 and R.C. 2901.09.

{¶11} Appellant assigns as error:

{¶12} "I. TRIAL COUNSEL WAS INEFFECTIVE FOR ARGUING COMMON-LAW SELF-DEFENSE AND FOR FAILING TO REQUEST THAT THE JURY BE INSTRUCTED ON THE CASTLE DOCTRINE, AS CODIFIED IN R.C. 2901.05 AND R.C. 2901.09. SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION; *STRICKLAND V. WASHINGTON*, 466 U.S. 668 (1984).

{¶13} "II. APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE A MERITORIOUS ASSIGNMENT OF ERROR IN MR. LAMPLEY'S DIRECT APPEAL OF RIGHT. SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION; *EVITTS V. LUCEY*, 469 U.S. 387 (1985)."

I. and II.

{¶14} Appellant's assigned errors raise common and interrelated issues; therefore, we will address the arguments together.

{¶15} Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis: First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below

an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.* Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.

{¶16} Ohio Revised Code section 2901.05(B)(1) provides,

{¶17} "Subject to division (B)(2) of this section, a person is presumed to have acted in self defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.

{¶18} "***

{¶19} "(3) The presumption set forth in division (B) (1) of this section is a rebuttable presumption and may be rebutted by a preponderance of the evidence."

{¶20} Revised Code section 2901.09, codifies specific circumstances under which a person has no duty to retreat.  The statute provides,

{¶21} "(B) For purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully is in that person's residence has no duty to

retreat before using force in self-defense, defense of another, or defense of that person's residence, and a person who lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another."

{¶22} Appellant maintains by failing to request the appropriate jury instructions and failing to object to the instruction given, Appellant's trial counsel failed to present what might have been a crucial statutory defense available to Appellant. Essentially, Appellant contends his counsel's failure lead to Appellant having the burden of proving he acted in self-defense; rather than the fact he acted in self-defense presumed according to the Castle Doctrine.

{¶23} At trial herein, Angela Davis, a witness to the incident at issue, testified:

{¶24} "Q. Can you tell us what is the fact as to whether you heard loud voices down in that area where Thomas and JB were?

{¶25} "A. Yes.

{¶26} "Q. Could you make out anything that was being said at that time?

{¶27} "A. No.

{¶28} "Q. Did you at any time ever see JB reach out or put his arm inside that van?

{¶29} "A. Yes.

{¶30} "Q. How was he doing this? Could you describe that?

{¶31} "A. He was pointing his hand in there towards his face.

{¶32} "Q. And did there come a time then that that van driven by Thomas Lampley moved from that area?

**{¶33}** "A. Yes.

**{¶34}** "Q. And where did the van go at that point in time?

**{¶35}** "A. He went up and parked behind my vehicle.

**{¶36}** "Q. Did he have to go up and turn around?

**{¶37}** "A. Yes.

**{¶38}** "Q. Do you know where he turned around?

**{¶39}** "A. I assumed that he did a u-turn.

**{¶40}** "Q. But he parked behind your vehicle?

**{¶41}** "A. Yeah.

**{¶42}** "Q. Do you know a person named or called Danny McClain?

**{¶43}** "A. Yes.

**{¶44}** "Q. And did you see him there that day?

**{¶45}** "A. Yes.

**{¶46}** "Q. And once Thomas moved his van from where you described it an proceeded up and ended up parking behind your vehicle, what did JB do at that time?

**{¶47}** "A. He ran down towards his vehicle again.

**{¶48}** "Q. The van?

**{¶49}** "A. The van."

**{¶50}** Tr. at 806-808.

**{¶51}** On cross-examination, Davis testified:

**{¶52}** "A. I pulled my vehicle in at I77 East (sic) 2nd Street. When I got out, I heard a bunch of yelling and commotion going on, and I walked down toward the building, and I seen Sylvia and I saw Lashonna, and I asked them what was going on. I

asked them who they was arguing with, they said Thomas.  I asked them why would you be arguing with the boss' husband.  I asked them did anybody call Miss Alverta. They said something about her cell phone wasn't working.

**{¶53}** "I looked over and I seen Thomas in the white van, and I seen JB.  And JB had his hand inside the window, just pointing.  I don't know what he was doing, but he had his hand inside the window."

**{¶54}** "* * *"

**{¶55}** Tr. at 827.

**{¶56}** Appellant himself testified at trial relative to the incident,

**{¶57}** "Q. When he mentioned for you to come on up here, was he yelling to get your attention?

**{¶58}** "A. Yeah, he was.  And I was going to go to my sister's house, but I didn't want the confrontation to come down to her house.  So that's why I just said I might as well go up there and talk to him.

**{¶59}** "Q. You say when you were talking and he's telling you, "You crossed the line, you disrespected my wife," things like this - -

**{¶60}** "A. That's what he was saying.

**{¶61}** "Q. - - during that time, he didn't double up his fists and punch you, did he?

**{¶62}** "A. No, he had his hands open like that, and straight.

**{¶63}** "Q. Jabbing at you?

**{¶64}** "A. Yes, sir.

**{¶65}** "Q. Did he make contact with you?

**{¶66}** "A. Yes, he did.

**{¶67}** "Q. Where at?

**{¶68}** "A. Right above my glasses.  He done it a couple times, and one time he actually hit my glasses.  So I had my glasses on my face.

**{¶69}** "* * *

**{¶70}** "Q. Okay.  Now, at that point in time when you stopped there in the street and JB comes out of the street and this altercation, whatever, goes on, between the two of you - -

**{¶71}** "A. Yes, sir.

**{¶72}** "Q. - - did there come a time that he left your driver's side door and walked away?

**{¶73}** "A. No, he didn't leave.  Danny McClain came to the side door with him, and when I looked and glanced out of the side mirror I seen Danny McClain approaching the vehicle, too.  *So I pulled up and turned around - - actually I pulled into my driveway at the office, but it was blocked.*  [emphasis added]

**{¶74}** "* * *

**{¶75}** "Q. Now, you've turned around, you have parked behind Angela Davis' vehicle, and what happens then after you turn around, park the white van behind Angela's car alongside the curb, what happens then?

**{¶76}** "A. I look up and JB is coming up on this side and he comes to my driver's side window.  And I said, 'Look, JB, I don't want to fight with you.  I already apologized to you, I'm [sic] apologized to your wife.'

**{¶77}** "Q. Stop there a minute.  Now, which window did he come to?

**{¶78}** "A. He came to the passenger side.

**{¶79}** "Q. The passenger side window.  Okay, go ahead.

**{¶80}** "A. So I kept on saying, 'JB, I'm apologizing to you.  I already apologized to your wife.  I don't want to fight.'  I kept telling him, 'I don't want to fight with you at all.'  When I looked up, glanced this way, Danny McClain was approaching me from the driver's side, and he was close, about two feet off, but JB was right in my window.

**{¶81}** "Q. Was Danny McClain, was he egging this thing on, so to speak, agitating, talking?

**{¶82}** "A. He kept on saying, 'Just get out of the car, just get out of the car.'

**{¶83}** "Q. Talking to you?

**{¶84}** "A. Yeah.

**{¶85}** "Q. JB is at the open window of your passenger door?

**{¶86}** "A. Yes, sir.

**{¶87}** "Q. And did there come a time that you reached down and picked up the gun and fired it in his direction?

**{¶88}** "A. Yes, there was.

**{¶89}** "Q. Why was that?

**{¶90}** "A. JB said, 'If you ain't going to get out I'm going to blow your head off right here,' and he reached behind his back like that, and that's when I reached.  I came up and fired a shot.  Then when I looked, Danny McClain was right on this side, so I got out to go after him because he started running towards the hatchback that was open on the SUV.

{¶91}    "When I see that he ran towards the SUV but I went and pursued him and he started ducking, and he said, 'I don't got nothing, Cuz, I don't got nothing.'  He wasn't no more a threat to me, so I turned around and went back to my vehicle.

{¶92}    "Q. Now, during this verbal back and forth between you and JB, before you picked the gun up and fired it as you described what he was doing - -

{¶93}    "A. Yes, sir.

{¶94}    "Q. - - did Angela Davis talk to you, do you recall?

{¶95}    "A. She came up to the side window, which was what caused me to glance and see Danny McClain, how close he was.  She came up to the side window and said, 'Thomas, you all need to stop that.'  That's all she got a chance to say.  That's all she said to me.  I heard her, but it was in the heat of that moment right before the shot was fired, and so there wasn't no way that I could respond or anything to what she was saying.  It was too late.

{¶96}    "Q. Did you see JB fall?

{¶97}    "A. Yeah, I did.

{¶98}    "Q. And you got out of the van with the gun in your hand?

{¶99}    "A. Yes, I did.

{¶100}  "Q. And chased after McClain?

{¶101}  "A. Yes, I did.

{¶102}  "Q. And he said what to you, 'Cuz, I don't got nothing'?

{¶103}  "A. He said, 'I don't got nothing Cuz, I don't got nothing.'

{¶104}  "Q. At that time you left and got back in your van?

{¶105}  "A. Yes, I did.

{¶106}  "Q. Did you leave then.

{¶107}  "A. Yes, I did."

{¶108}  Tr. at 857-859; 863-866.

{¶109}  Appellant later testified,

{¶110}  "Q. And at the time you bring it up and fire that round what's JB doing?

{¶111}  "A. JB is reaching.

{¶112}  "Q. He was reaching?

{¶113}  "A. Yes, sir.

{¶114}  "Q. A reach that Cody Richards didn't see?

{¶115}  "A. Cody Richards didn't see.

{¶116}  "Q. But he should have saw it?

{¶117}  "A. I don't know.  That's what you say.  I'm just saying that if he was leaning inside my vehicle like that with his face inside my vehicle, why didn't he get shot in the face?

{¶118}  "Q. that's an excellent point because he got shot in the side, didn't he?

{¶119}  "A. That's right.'

{¶120}  Tr. at 919.

{¶121}  Pursuant to the above testimony we find the evidence does not support a conclusion J.B. was in the process of entering or inside the Appellant's vehicle at the time of the shooting.  Rather, Appellant himself testified J.B. would not have been leaning inside the vehicle at the time Appellant fired the gun because J.B. was shot in the side, not in the face.  And while Appellant claims J.B. had earlier reached inside making contact with his face, this occurred prior to the shooting and after Appellant had

moved his vehicle and parked behind Davis' vehicle. The trial testimony of Angela Davis and Appellant himself demonstrates although J.B. was "leaning" in the vehicle during the first confrontation with J.B., the evidence indicates at the time of the subsequent confrontation and shooting, J.B. approached the passenger side of the vehicle, and was not in the process of entering or inside the vehicle. Appellant testified J.B. was reaching behind his back, not reaching into his vehicle. Accordingly, we do not find Appellant's trial counsel was ineffective in failing to request the jury instruction on the Castle Doctrine, as codified in 2905.01 and 2901.09, where the evidence does not warrant the instruction herein.

{¶122} Appellant's first and second assignments of error are overruled.

{¶123} The judgment of the Richland County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Farmer, J. and

Edwards, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                         :
                                      :
    Plaintiff-Appellee            :
                                      :
-vs-                                  :            JUDGMENT ENTRY
                                      :
THOMAS LAMPLEY                        :
                                      :
    Defendant-Appellant           :            Case No. 10CA30


      For the reason stated in our accompanying Opinion, the judgment of the

Richland County Court of Common Pleas is affirmed.  Costs to Appellant.




s/ William B. Hoffman
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer
HON. SHEILA G. FARMER


s/ Julie A. Edwards
HON. JULIE A. EDWARDS