[Cite as *State v. Adams*, 2013-Ohio-4258.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 13CA0008-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| WILLIAM ADAMS | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 12 TRC 04516 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2013

---

WHITMORE, Judge.

{¶1} Defendant-Appellant, William Adams, appeals from his convictions in the Medina Municipal Court. This Court affirms.

I

{¶2} On July 31, 2011, Officer Justin Bennett of the Montville Police Department observed Adams traveling 60 m.p.h. in a 45 m.p.h. zone. Officer Bennett initiated a traffic stop to issue Adams a citation for speeding. When Officer Bennett made contact with Adams, he noticed a strong odor of alcohol. According to Officer Bennett, Adams avoided eye contact and kept his chin tucked into his chest. Officer Bennett testified that Adams' speech was slurred and mumbled. When he did make eye contact with Officer Bennett, Adams' eyes were "bloodshot and glossy." Adams refused to perform any field sobriety tests and was arrested. Adams also refused a breathalyzer test.

{¶3}   Adams was charged with: (1) one count of operating a motor vehicle under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree; (2) one count of OVI with a prior OVI conviction within the past twenty years and refusing to submit to a chemical test, in violation of R.C. 4511.19(A)(2), a misdemeanor of the first degree; and (3) speeding, in violation of R.C. 4511.21(C), a minor misdemeanor.  After a jury trial, Adams was convicted of all three charges.  Adams now appeals and raises three assignments of error for our review.

## II

### Assignment of Error Number One

OFFICER BENNETT ARRESTED APPELLANT FOR OVI BASED ON THE FOLLOWING OBSERVATIONS: SPEEDING, BLOODSHOT EYES, ADMISSION TO CONSUMING ONE BEER, STRONG ODOR OF ALCOHOL, FUMBLING WITH HIS WALLET, MUMBLING, AND AVOIDING EYE CONTACT.  MR. ADAMS' SPEECH WAS NOT SLURRED, HE DID NOT DRIVE ERRATICALLY, AND HE REFUSED FIELD SOBRIETY TESTS. THE TRIAL COURT'S CONCLUSION THAT PTL. BENNETT HAD PROBABLE CAUSE TO ARREST WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE.   THE   TRIAL   COURT'S CONCLUSION WAS ERRONEOUS.

{¶4}   In his first assignment of error, Adams argues that the court erred in denying his motion to suppress.  Specifically, Adams argues that the court erred in finding that there was probable cause to arrest him for OVI.

{¶5}   The Ohio Supreme Court has held that:

[a]ppellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982).  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court,

whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. *Accord State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 6 (*Burnside* applied). Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. Lorain No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

{¶6} "In determining whether the police had probable cause to arrest an individual for [OVI], we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was under the influence." *State v. Ragle*, 9th Dist. Summit No. 25706, 2012-Ohio-4253, ¶ 26, quoting *State v. Homan*, 89 Ohio St.3d 421, 427, *superseded on other grounds*, *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 9, citing R.C. 4511.19. "Even without positive results on field sobriety testing, the totality of the facts and circumstances may support probable cause to arrest for [OVI]." *State v. Walters*, 9th Dist. Medina No. 11CA0039-M, 2012-Ohio-2429, ¶ 10. "[T]he standard for probable cause does not require a prima facie showing of criminal activity; rather, the standard requires 'only a showing that a probability of criminal activity exists.'" *State v. Tejada*, 9th Dist. Summit No. 20947, 2002-Ohio-5777, ¶ 8, quoting *State v. Young*, 146 Ohio App.3d 245, 254 (11th Dist.2001).

{¶7} At the suppression hearing, Officer Bennett testified that he witnessed Adams traveling 60 m.p.h. in a 45 m.p.h. zone. He proceeded to follow Adams and eventually effectuated a traffic stop. Officer Bennett testified that he did not notice any erratic driving and had pulled Adams over merely to issue a citation for speeding. According to Officer Bennett, when he initially approached Adams, Adams avoided eye contact and kept his chin buried in his

chest. Officer Bennett noticed a strong odor of alcohol and began to suspect that Adams had been drinking. He asked Adams where he was coming from and if he had been drinking. Adams replied that he was coming from "[d]owntown" and that he had consumed one beer. According to Officer Bennett, Adams' "speech was kind of slurred, and he was kind of mumbling." Officer Bennett testified that when he asked Adams for his driver's license and proof of insurance, Adams "fumbl[ed]" through paperwork in his wallet and had difficulty locating the documents. Officer Bennett said that when Adams did finally make eye contact with him, Adams' eyes were "bloodshot and glossy."

{¶8} Officer Bennett testified that he returned to his cruiser and requested backup because he had decided to conduct field sobriety tests. He then retrieved Adams' driving record and noticed that he had three prior OVI convictions. When backup arrived, Officer Bennett returned to Adams' car and asked him to step out of the vehicle. According to Officer Bennett, Adams appeared "very unsure of himself and was stumbling a little bit as he [got] out" of his car. Adams immediately told Officer Bennett that he would not perform any field sobriety tests. Officer Bennett testified that when Adams walked to the front of the cruiser he was stumbling and did "not [have] an adequate gait."

{¶9} A video of the traffic stop was admitted into evidence. As the video was played, Officer Bennett noted times in which he believed Adams physically stumbled. The only audio recording of the stop is when Adams was in the back seat of the police cruiser, post-arrest. Officer Bennett admitted that Adams did not appear to be slurring his words in the video; however, he testified that it did sound like Adams was stumbling with his speech.

{¶10} The trial court found that, while Officer Bennett believed Adams physically stumbled when he exited his car and did not walk with an adequate gait, the video did not

support these findings as fact. The court further found that Adams did not sway or need support and did not grab or lean against his truck. Despite the inconsistencies between Officer Bennett's testimony and the video, the court found that there was probable cause to support the arrest for OVI. Specifically, the court found that "the fact that [Adams] would not make eye contact with the officer upon his approach, kept his head buried in his chest, with an odor of an alcoholic beverage coming from the vehicle and slurred mumbling speech" was sufficient to justify the detention for field sobriety tests. Additionally, the "bloodshot and glossy eyes, [Adams'] admission as to the consumption of one beer, and the very strong and dominant odor of an alcoholic beverage after [Adams] stepped from his vehicle, combined with [Adams'] difficulty obtaining his license and registration are grounds which support the officer's * * * belief that [Adams'] had consumed more than one beer [and was under the influence]." We conclude the court's factual findings are supported by the record.

{¶11} Adams argues that the "[b]loodshot eyes, mumbling slurred speech, a strong odor of alcohol, an admission to consuming one beer, and fumbling for a wallet do not show impaired driving." (Emphasis omitted.)

{¶12} Officer Bennett did not observe any impaired driving in the time that he followed Adams. However, this alone will not defeat a finding of probable cause. *See State v. Shaffer*, 11th Dist. Portage No. 89-P-2059, 1990 WL 127215, *4 (Aug. 31, 1990) (while no impaired driving was observed by officers, probable cause existed when appellant smelled of alcohol, had slurred speech, bloodshot eyes, was clumsy, admitted to drinking alcohol, and performed poorly on field sobriety test). According to Officer Bennett, Adams kept his head buried in his chest and did not make eye contact. In his conversations with Adams prior to his arrest, Officer Bennett described Adams as "mush[-]mouth[ed]" and his speech as being mumbled and slurred.

Adams admitted to consuming one beer and had difficulty locating his license and insurance. Officer Bennett testified that the odor of alcohol from Adams was very strong and that his eyes were "bloodshot and glossy." Based on his observations, Officer Bennett believed Adams had consumed more than one beer and was impaired.

{¶13} After a careful review of the record, we conclude that the facts show that "a probability of criminal activity exist[ed]." *See Tejada*, 2002-Ohio-5777, at ¶ 8, quoting *Young*, 146 Ohio App.3d at 254. Because Officer Bennett had probable cause to arrest Adams for OVI, the court did not err in denying Adams' motion to suppress. Adams' first assignment of error is overruled.

### Assignment of Error Number Two

THE TRIAL COURT ALLOWED THE JURY TO HEAR EVIDENCE OF APPELLANT'S <u>THREE</u> PRIOR OVI CONVICTIONS. THE STATE WAS ONLY REQUIRED TO PROVE THAT APPELLANT HAD <u>ONE</u> PRIOR OVI CONVICTION. THE DEFENSE WAS WILLING TO STIPULATE TO ONE PRIOR CONVICTION, BUT THE STATE REFUSED. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL. THE COURT'S DENIAL OF APPELLANT'S MOTION IN *LIMINE* FORCED APPELLANT'S COUNSEL TO ADDRESS THE PREJUDICE OF THE THREE PRIOR CONVICTIONS IN *VOIR DIRE*. THE COURT'S LIMITING INSTRUCTION COULD NOT OVERCOME THIS PREJUDICE.

{¶14} In his second assignment of error, Adams argues that the court erred in admitting evidence of all three of his prior OVI convictions. Specifically, Adams argues that two of his three prior convictions should have been excluded from evidence because the risk of unfair prejudice substantially outweighed its probative value. Under the specific circumstances presented in this case, we disagree.

{¶15} To support a conviction under R.C. 4511.19(A)(2) the State must prove: (1) the defendant was operating a vehicle within the state while under the influence of alcohol or drugs;

(2) the defendant refused to submit to a chemical test; and (3) the defendant had been convicted or pleaded guilty to OVI within the past twenty years. R.C. 4511.19(A)(2).

{¶16} Adams does not argue that it was an error to admit into evidence one prior OVI conviction. *State v. Smith*, 68 Ohio App.3d 692, 695 (9th Dist.1990) ("When a previous conviction is an element of an offense, the [S]tate must prove the prior offense beyond a reasonable doubt."). Instead, Adams argues that the court erred in admitting evidence of three prior convictions because the statute only requires proof of one and he was ready to stipulate to this element. We note that Adams, both in his motion in limine and at the beginning of trial, agreed to stipulate to whichever one of his three prior convictions the State would have wanted to submit to the jury. However, the State rejected the proposed stipulation and indicated its intent to admit into evidence Adams' BMV record reflecting all three prior OVI convictions. The trial court correctly concluded that it could not force the State to accept Adams' proposed stipulation. *Id.* ("Neither the [S]tate nor the trial court is required to accept a defendant's stipulation as to the existence of [a] conviction."). This, however, does not resolve the issue of whether it was an error to admit evidence of all three prior OVI convictions.

{¶17} Evid.R. 402 states that all relevant evidence is admissible, unless it is excluded by the Constitution, statute, or rule. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. The court must exclude relevant evidence if it finds that "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶18} "It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court." *Columbus v. Taylor*, 39 Ohio St.3d 162, 164

(1988). An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A reviewing court will not "reject an exercise of this discretion unless it clearly has been abused and the criminal defendant thereby has suffered material prejudice." *State v. Long*, 53 Ohio St.2d 91, 98 (1978).

{¶19} Prior to trial, Adams filed a motion in limine requesting that the court prohibit the State from introducing into evidence more than one of his prior OVI convictions. In his motion, Adams argued that R.C. 4511.19(A)(2) only required proof of one prior OVI conviction and agreed to stipulate to whichever of the three convictions the State should choose to present. Adams argued that Evid.R. 403(A) required the trial court to exclude his two additional convictions because their probative value was substantially outweighed by the danger of unfair prejudice. The trial court denied his motion. The court wrote that it did "not believe that introducing one or more prior convictions for [OVI] would confuse the issues in the case, mislead the jury, or constitute unfair prejudice." The court further found that "[t]he fact that [Adams] would be willing to stipulate to one conviction is not binding upon the State of Ohio as to how it chooses to prove an element of its [case]."

{¶20} During voir dire, defense counsel informed the petit jury that Adams had three prior convictions and proceeded to ask numerous questions about whether jurors could put this aside and hold the State to its burden of proof. After jury selection, defense counsel again proposed a stipulation to one prior OVI conviction. Defense argued that the stipulation would avoid any unfair prejudice under Evid.R. 403(A). The State rejected the proposal and argued that the jury had already been informed of Adams' three prior OVI convictions by defense counsel during voir dire.

{¶21} In light of defense counsel's admission to the jury of the existence of three prior OVI convictions in voir dire, we cannot conclude that the court abused its discretion in admitting evidence of all three convictions. Defense counsel made a strategic decision to inform the jury of the prior convictions. Because the jury was fully aware at the start of the trial that Adams had three prior OVI convictions, there was no unfair prejudice by admitting evidence of those convictions.

{¶22} Adams' second assignment of error is overruled.

## Assignment of Error Number Three

THE MANIFEST WEIGHT OF THE EVIDENCE DEMONSTRATED THAT WILLIAM ADAMS DID NOT OPERATE HIS VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL. THE JURY CLEARLY LOST ITS WAY IN REACHING VERDICTS CONTRARY TO THE WEIGHT OF THE EVIDENCE.

{¶23} In his third assignment of error, Adams argues that his convictions are against the manifest weight of the evidence.

{¶24} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *State v. Thompkins* 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the

conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶25} R.C. 4511.19(A)(1)(a) and (A)(2) prohibit a person from operating a vehicle under the influence of alcohol. "Under the influence" has been defined as "[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." *State v. Smith*, 5th Dist. Licking No. 09-CA-42, 2010-Ohio-1232, ¶ 92, quoting *Toledo v. Starks*, 25 Ohio App.2d 162, 166 (6th Dist.1971).

{¶26} Officer Bennett testified that at about 9:30 p.m. on July 31, 2011, he observed Adams traveling 60 m.p.h. in a 45 m.p.h zone. Officer Bennett explained that he did not immediately effectuate a traffic stop because it is police department policy to run the license plate number through the computer prior to stopping a car for speeding. When Adams stopped at a red light, Officer Bennett was able to catch up and read his license plate. After receiving information back on his computer, Officer Bennett turned on his lights to initiate the traffic stop. Adams proceeded a short distance, made a proper left turn, and stopped. The dash-cam video recording begins when Adams is stopped at the red light. Officer Bennett testified that there appeared to be a bit of a delay before Adams stopped, but acknowledged that it was "prudent and reasonable" for him to make the turn off the road they were traveling on before stopping. Officer Bennett explained that he did not notice any erratic driving and that the purpose of the stop was to issue a citation for speeding.

{¶27} Officer Bennett testified that when he initially made contact with Adams, he explained the reason for the stop. At this point, Officer Bennett said Adams was avoiding eye contact and keeping his chin buried in his chest. Officer Bennett described this behavior as unusual and testified that he could smell a strong odor of alcohol. He then asked Adams for his license and registration. According to Officer Bennett, Adams "fumbl[ed]" with his wallet and had trouble locating the documents. Officer Bennett testified that when he finally made eye contact with Adams, Adams' eyes were "bloodshot and glossy." Officer Bennett further testified that Adams' speech was slurred, mumbled, and "[h]e sounded mush[-]mouth."

{¶28} Officer Bennett returned to his cruiser and requested backup. According to Officer Bennett, he requested backup because he had decided to conduct field sobriety tests. He then proceeded to check Adams' driving record and discovered that Adams had three prior OVI convictions.

{¶29} When backup arrived, Officer Bennett returned to Adams' vehicle and asked him to step out. According to Officer Bennett, Adams was unstable as he exited the vehicle and immediately refused to perform any field sobriety tests. Officer Bennett asked Adams to move to the front of the police cruiser, and Adams again refused to take any tests. Adams then walked back to the cruiser and placed his hands on the hood of Officer Bennett's patrol car. Officer Bennett told Adams that he was not yet under arrest and continued to ask that he perform the sobriety tests. Adams again refused, and Officer Bennett placed him under arrest. Because of a malfunctioning microphone, the dash-cam video does not contain any audio of the stop up to this point.

{¶30} Officer Bennett placed Adams in the back of the police cruiser and proceeded to fill out paperwork. This portion of the video does contain audio and Adams can be heard

answering a few questions. At trial, Officer Bennett admitted that on the video Adams was understandable and did not slur his words. However, Officer Bennett testified that, to him, Adams' speech still sounded somewhat mumbled.

{¶31} Adams called two witnesses to testify on his behalf. Attorney Samuel Calabrese testified that he represented Adams in a couple of business related matters. Calabrese testified that he met with Adams on the afternoon of July 31, 2012, the date of his arrest. They had originally planned to meet the day before, but Adams had rescheduled because he was still jet lagged from an overseas trip. Adams met Calabrese at his office in downtown Cleveland. According to Calabrese, the meeting began around 3:30 p.m. and ended around 6:30 p.m. Calabrese testified that he received a phone call from Adams about 10:00 p.m. that evening. Adams told Calabrese that he had been arrested for OVI and wanted to know if he should submit to a breath test. Calabrese testified that he advised Adams against taking the breathalyzer test. He explained that he did not know what Adams had to drink that night nor did he know that Adams had three prior OVI convictions. According to Calabrese, he would advise every client to refuse a breathalyzer test.

{¶32} In addition to Calabrese, Adams called John Siliko to testify. Siliko is a federal law enforcement officer and owns rental property with Adams. Siliko testified that he had been in the rental business with Adams for about 10 years and had been his friend for about 13 years. According to Siliko, he met Adams at one of the rental properties in Parma at 7:00 p.m. on July 31st. The two spent about 30 minutes at the property then drove to Hive, a local restaurant and bar, to discuss business matters. According to Siliko, they each drank one beer, stayed for about one hour reviewing business papers, and left at the same time. Siliko testified that he followed Adams south because they both use the same highway exit to get home. Siliko said that Adams

did not appear drunk and that he did not notice any erratic driving while he was following Adams. Siliko estimated it was about 9:00 p.m. when they exited Interstate 71 and parted ways.

{¶33} Adams argues that the weight of the evidence does not support a finding that he was under the influence of alcohol. Adams stresses that there was no evidence of impaired driving. He argues that he was not avoiding eye contact with Officer Bennett, but was instead merely looking for his license and insurance as requested. Moreover, Adams argues, the video shows that he did turn to look at Officer Bennett during their initial contact. Adams asserts that he had difficulty locating his license and insurance because he was nervous, not intoxicated; and that his eyes were bloodshot because he was exhausted from returning recently from a trip overseas. Adams argues that, despite Officer Bennett's testimony that he stumbled, swayed, and slurred his speech, the video shows otherwise. The video, according to Adams, is proof that he was not impaired.

{¶34} Officer Bennett testified that Adams was avoiding eye contact with him prior to him asking for his license and insurance information and that there was a strong odor of alcohol. Officer Bennett asked Adams where he was coming from and whether he had been drinking that night. According to Officer Bennett, Adams' speech was mumbled and slurred. Although Officer Bennett acknowledged that Adams' speech post-arrest in the cruiser was understandable, Officer Bennett testified that it still sounded mumbled and he "stumble[d] over his words." Officer Bennett admitted to several scrivener's errors in his police report. He explained that while Adams did not stumble or grab his truck for support, he had "an abnormal gait" and was "kind of unsure, unstable." Despite the inconsistencies between the police report and the video, Officer Bennett maintained that the video supported his belief that Adams was under the influence of alcohol.

**{¶35}** After reviewing the record, including the video, we cannot conclude that this is the exceptional case where the evidence weighs heavily against the conviction. *Otten*, 33 Ohio App.3d at 340. Adams' third assignment of error is overruled.

III

**{¶36}** Adams' assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

HENSAL, J.
CONCURS.

MOORE, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶37} I join in the majority's discussion of Mr. Adams' first and third assignments of error. However, I would engage in a different analysis of Mr. Adams' second assignment of error.

{¶38} I agree that the trial court was correct in denying Mr. Adams' motion in limine and in overruling his objection to the admission of the BMV report during trial, and thus the trial court did not err. As neither the prosecutor nor the trial court was bound to accept a stipulation to the prior conviction, which was an element of the offense, the State bore the burden of proving a prior conviction beyond a reasonable doubt. *See Smith*, 68 Ohio App.3d at 695; *State v. Williams*, 9th Dist. Summit No. 19994, 2001 WL 111574, *1 (Feb. 7, 2001), citing *State v. Weible*, 9th Dist. Summit No. 13754, 1989 WL 24227 (Mar. 15, 1989). Although I believe that the report carried a danger of unfair prejudice, I do not believe that this prejudice outweighed its probative value. *See* Evid.R. 403(A). On this basis, I would conclude that the trial court did not abuse its discretion in admitting evidence of more than one prior conviction.

{¶39} However, the majority's discussion appears to read as though it has accepted the position advanced by the State that any potential error in the admission of the report amounted to invited error because defense counsel voluntarily disclosed Mr. Adams' previous convictions during voir dire. I am compelled to write separately on this point. I believe that, after the trial court denied the motion in limine, it was prudent and perhaps necessary for defense counsel to address the topic of multiple prior OVI convictions with the jury in order to gauge whether the potential jurors could fairly render a verdict in this case. I do not believe doing so invited error

in admission of the report. However, although I appreciate the difficulty that defense counsel faced in questioning jurors after the denial of his motion in limine, I believe that defense counsel could have "ask[ed] questions of a more general nature so as to identify jurors who could not be unbiased when faced with certain information." *See State v. Culp*, 9th Dist. Summit No. 26188, 2012-Ohio-5395, ¶ 32. Therefore, defense counsel was not "forced," as Mr. Adams claims, to reveal to the jurors "the precise information he did not want the State to present to the jury during the trial." *See id.*

{¶40} In any event, because the trial court did not err in denying the motion in limine and admitting the BMV report, I agree that Mr. Adams' second assignment of error should be overruled.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

J. MATTHEW LANIER, Prosecuting Attorney, for Appellee.