[Cite as *State v. Johnson*, 2014-Ohio-62.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 12CA0066-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHESTER E. JOHNSON | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 11CR0292 |

DECISION AND JOURNAL ENTRY

Dated: January 13, 2014

WHITMORE, Judge.

{¶1} Defendant-Appellant, Chester Johnson, appeals from his convictions in the Medina County Court of Common Pleas. This Court affirms.

I

{¶2} While driving home sometime around midnight, Johnson saw his cousin, Danny McCutcheon, standing outside a bar and picked him up. The two briefly visited another bar before Johnson drove McCutcheon home. At the time, McCutcheon was staying with a man named Jeff Lutz and Lutz' girlfriend, Ashley McCaman. McCutcheon invited Johnson to come meet Lutz when they arrived at his house, so Johnson parked his car and walked up to the house with McCutcheon. Both Lutz and his friend, Andrew Leguillon, were sitting on the enclosed porch drinking beer when Johnson and McCutcheon arrived. The events that transpired next were a matter of dispute in the court below.

{¶3} According to Lutz and Leguillon, Johnson attacked Lutz and ultimately retrieved a rubber mallet from his car. Johnson then broke through the locked metal gate surrounding Lutz' home and used the mallet to strike Lutz and McCutcheon. According to Johnson, Lutz started the fight and Lutz, Leguillon, and McCutcheon chased him out into the street when he tried to run away. He then used the mallet, which Lutz had thrown at him, to strike at the men in order to end the attack. Both Lutz and McCutcheon suffered injuries as a result of the attack. Specifically, McCutcheon was treated for a head wound that was bleeding profusely, and Lutz was treated for a concussion. Lutz later had to have surgery because his doctor discovered that he was suffering from a pseudoaneurysm in his carotid artery as a result of a blow to the head.

{¶4} Johnson also suffered an injury to his left forearm as a result of the events that transpired. Johnson claimed that he sustained the injury when one of the men reached into his car and stabbed him with a screwdriver. There was testimony, however, that the puncture wounds on Johnson's arm visually matched the points that jutted out of the metal fence surrounding Lutz' house. DNA from a piece of flesh that the police discovered on one of the fence's points was determined to be consistent with Johnson's DNA.

{¶5} A grand jury indicted Johnson on each of the following counts: (1) felonious assault, in violation of R.C. 2903.11(A)(1); (2) felonious assault, in violation of R.C. 2903.11(A)(2); and (3) breaking and entering, in violation of R.C. 2911.13(B). Both felonious assault counts also contained attendant repeat violent offender ("RVO") specifications, pursuant to R.C. 2941.149. The matter went to trial, and a jury found Johnson guilty on all three counts. Johnson then stipulated to the prior convictions that formed the basis of his RVO specifications, and the court found him guilty of the specifications. The court sentenced Johnson to a total of fourteen years in prison.

{¶6}    Johnson now appeals and raises three assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT VIOLATED CONSTITUTIONAL DUE PROCESS AND COMMITTED PLAIN ERROR TO THE PREJUDICE OF DEFENDANT-APPELLANT BY REFUSING TO GIVE A JURY INSTRUCTION REQUESTED BY THE DEFENSE ON THE "CASTLE DOCTRINE" OF SELF-DEFENSE, PURSUANT TO R.C. 2901.05(B) AND R.C. 2901.09, INSTEAD OF ONLY THE STANDARD JURY INSTRUCTION ON SELF-DEFENSE, WHERE DEFENDANT-APPELLANT WAS ASSAULTED FIRST WHILE LAWFULLY OCCUPYING HIS OWN VEHICLE.

{¶7}    In his first assignment of error, Johnson argues that the trial court erred when it refused to give the jury additional instructions regarding his theory of self-defense. Specifically, he argues that the court should have instructed the jury that, when a person lawfully occupies his vehicle, that person has no duty to retreat and a presumption of self-defense arises. We disagree.

{¶8}    "This Court reviews a trial court's decision to give or not give jury instructions for an abuse of discretion under the particular facts and circumstances of the case." *State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 68. "A trial court's failure to give a proposed jury instruction is only reversible error if the defendant demonstrates that the trial court abused its discretion, and that the defendant was prejudiced by the court's refusal to give the proposed instruction." *State v. Sanders*, 9th Dist. Summit No. 24654, 2009-Ohio-5537, ¶ 45, quoting *Azbell v. Newark Grp., Inc.*, 5th Dist. Fairfield No. 07 CA 00001, 2008-Ohio-2639, ¶ 52. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶9}    To establish self-defense in circumstances involving the application of deadly force, a defendant must prove that he: "(1) * * * was not at fault in creating the situation giving rise to the affray; (2) * * * ha[d] a bona fide belief that he was in imminent danger of death or

great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) * * * [did] not [] violate[] any duty to retreat or avoid the danger." *State v. Westfall*, 9th Dist. Lorain No. 10CA009825, 2011-Ohio-5011, ¶ 19, quoting *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 4. Yet, a person does not have a duty to retreat if that person uses force in self-defense while "lawfully [] an occupant of that person's vehicle." R.C. 2901.09(B).

{¶10} Johnson argues that the trial court abused its discretion by not instructing the jury, pursuant to R.C. 2901.09(B), that he did not have a duty to retreat once lawfully inside his car. The trial court refused to issue the instruction because, even under Johnson's version of the events, he was not inside his vehicle when he attacked Lutz and McCutcheon. Having reviewed the record, we cannot conclude that the court abused its discretion by refusing to issue the instruction.

{¶11} Lutz testified that he and his best friend, Leguillon, were relaxing on the front porch of his home when Johnson arrived with McCutcheon. Johnson and McCutcheon began to argue with one another, and Lutz encouraged them to stop. According to Lutz, Johnson then punched Lutz in the face and choked him until Leguillon intervened. Leguillon physically restrained Johnson, but released him when he indicated that he was done fighting. When Leguillon released Johnson, Johnson left the porch to walk to his car and either Lutz or Leguillon locked the metal gate surrounding the house. Johnson returned from his car with a claw hammer, but was unable to open the locked gate. He then threw the hammer toward the house and walked back to his car. When Johnson returned a second time, he was carrying a rubber mallet. Johnson then managed to rip the gate open and attacked Lutz and McCutcheon with the rubber mallet.

Lutz denied ever chasing Johnson out into the street or attacking him in any manner. Leguillon and McCaman, Lutz' girlfriend, corroborated Lutz' version of the events.

{¶12} Johnson testified that, while he was on the porch, Lutz accused him of disrespecting McCutcheon and struck him with the beer he was holding. In response, Johnson punched Lutz in the face. Johnson testified that Lutz then tried to grab his legs while Leguillon jumped on him from behind and placed him in a choke hold. A fight ensued, and, when Johnson was finally released from the choke hold, he fled the porch and ran to his car. According to Johnson, Lutz, Leguillon, and McCutcheon ran after him.

{¶13} Johnson testified that he was able to get into his car before the three men grabbed at him and tried to pull him out through his window. Johnson further testified that one of the men used a screwdriver to stab him in the arm. According to Johnson, he could not retrieve his keys from his seated position, so he flung open the car door, knocked down his attackers, and pulled out his keys. Johnson testified that he then got back into the driver's seat, started the car, and began to pull away. Just then, however, Lutz threw a rubber mallet at Johnson's car. Johnson stated that the mallet ricocheted off the door and his head before coming to rest in his lap. He then decided that he "had to make [the attack] stop," so he put the car in park and got out with the mallet. When he did so, Leguillon ran and Lutz and McCutcheon put their hands in the air. Nevertheless, Johnson testified that he swung the mallet at Lutz and McCutcheon. After he struck Lutz and McCutcheon, Johnson got back into his car and drove off.

{¶14} R.C. 2901.09(B) only eliminates the duty to retreat element of self-defense if the person using force "lawfully is an occupant of that person's vehicle." Lutz, Leguillon, and McCaman all testified that Johnson attacked Lutz and McCutcheon with a rubber mallet after he retrieved the mallet from his car and broke through the gate surrounding Lutz' house. Moreover,

even under Johnson's version of the events, he was not occupying his car when he used force against Lutz and McCutcheon. Johnson's testimony was that he chose to stop his car and get out for the purpose of using force against Lutz and McCutcheon. He, therefore, was not an "occupant" of his vehicle when he attacked Lutz and McCutcheon. *See State v. Lampley*, 5th Dist. Richland No. 10CA30, 2012-Ohio-4071, ¶ 121. Consequently, he was not entitled to an instruction under R.C. 2901.09(B), and the court did not abuse its discretion by failing to issue it.

{¶15} Johnson also argues that the trial court committed plain error by not instructing the jury that he was entitled to a presumption of self-defense. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶16} R.C. 2901.05(B) affords a presumption of self-defense to a person who uses defensive force against another person who "has unlawfully and without privilege to do so entered[] the * * * vehicle occupied by the person using the defensive force." Johnson cannot demonstrate plain error as a result of the trial court's failure to give the foregoing instruction. Under Johnson's own version of the events, he was in the process of driving away when he instead decided to stop his car, put it in park, and get out with the mallet. No one was entering Johnson's car at that point in time. *See* R.C. 2901.05(B). Johnson's argument that the trial court committed plain error by not giving an instruction under R.C. 2901.05(B) lacks merit. His first assignment of error is overruled.

Assignment of Error Number Two

THE TRIAL COURT VIOLATED CONSTITUTIONAL DUE PROCESS AND COMMITTED PLAIN ERROR TO THE PREJUDICE OF DEFENDANT-APPELLANT BY ANSWERING A JURY QUESTION DUIRNG (sic) DELIBERATIONS ON THE DIFFERENCE BETWEEN COUNT I, FELONIOUS ASSAULT IN VIOLATION OF R.C. 2903.11(A)(1) – CAUSING SERIOUS PHYSICAL HARM – AND COUNT II, FELONIOUS ASSAULT IN VIOLATION OF R.C. 2903.11(A)(2) – CAUSING PHYSICAL HARM USING A DEADLY WEAPON – BY MAKING REFERENCE TO AND EXPLAINING THE MERGER DOCTRINE FOR PURPOSES OF SENTENCING.

{¶17}  In his second assignment of error, Johnson argues that the manner in which the trial court answered a question posed by the jury during deliberations violated his due process rights.  We disagree.

{¶18}  During deliberations, the jury posed a question regarding the difference between Johnson's two felonious assault counts and whether the counts went "hand in hand."  The court instructed the jury:

> The elements in Count I are that * * * the State has to prove beyond a reasonable doubt that [Johnson] knowingly caused serious physical harm as that is defined, okay?
>
> In Count II, they have to show that he knowingly caused or attempted to cause physical harm with a deadly weapon, so the first count, the element does not include with a deadly weapon but he has to knowingly cause or attempt to cause serious physical harm.
>
> In the second charge, it's knowingly causing or attempting.  The first charge is knowingly causing serious physical harm.  The second charge is knowingly causing or attempting to cause physical harm with a deadly weapon.

The court then asked both the State and defense counsel if they were satisfied with the court's definition of the two offenses, and both sides responded affirmatively.

{¶19}  Moving on to the portion of the jury's question dealing with whether the offenses went "hand in hand," the court stated:

> Then you say you wanted to know do Count I and II go hand in hand. * * * [T]he law in Ohio is that these acts will merge for purposes of sentencing.  If he was to

be sentenced and only if * * * he was convicted of both of these charges and if you found by proof beyond a reasonable doubt that he was guilty of both of these charges, they would merge for purposes of sentencing.

The court then asked both the State and defense counsel if they believed the court had given "a correct summary of the law in Ohio." Both sides responded affirmatively. The State, however, asked the court to define the doctrine of merger for the jury, and the court agreed.

{¶20} In defining the concept of merger, the court stated:

[T]he merger doctrine is a person is accused of two separate offenses, okay, but there was really only one act that did these two offenses, do you follow me? So, therefore, the law says well, * * * the State can charge both of these offenses and the person can be found guilty of both of these offenses, but because there was only one act, you can only be sentenced on one of those offenses.

The jury foreperson then stated "[a]nd I believe that explains it." The court then asked both the State and defense counsel if they were satisfied with the court's definition of the merger doctrine. Both sides responded affirmatively.

{¶21} "Failure to object to a jury instruction limits review of the alleged error to the plain error standard." *State v. Bellomy*, 9th Dist. Medina No. 12CA0075-M, 2013-Ohio-3187, ¶ 19. Johnson argues that the court committed plain error in answering the jury's question and in defining the concept of merger because the court, "in effect, gave the jury permission to find [him] 'guilty' of both counts of felonious assault." As previously noted, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long*, 53 Ohio St.2d at paragraph three of the syllabus.

{¶22} Even assuming that the court should not have explained the doctrine of merger for the jury, the record reflects that the court gave the jury additional instructions directly after it

asked the parties if they were satisfied with its definition of merger. Specifically, the court instructed the jury:

> [J]ust to reiterate and make sure that we understand each other, my explaining this to you does not do the following things.
>
> Number one, it does not indicate my personal view * * * on the facts of this case because that is not my job in a jury trial.
>
> Number two, it certainly is not my intention by explaining these things to indicate in any way the State of Ohio doesn't have (sic) a lesser burden. It still has a burden of establishing beyond a reasonable doubt.

Thus, the judge specifically instructed the jury that he had not meant to convey any personal views about the evidence and that the State bore the burden of proving its entire case beyond a reasonable doubt.

{¶23} "A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." *State v. Simpson*, 9th Dist. Lorain No. 11CA010138, 2012-Ohio-3195, ¶ 37, quoting *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). In light of the court's curative instruction to the jury, Johnson cannot demonstrate that he was prejudiced by the court's explanation of the merger doctrine. Johnson's second assignment of error is overruled.

<u>Assignment of Error Number Three</u>

> DEFENDANT-APPELLANT'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶24} In his third assignment of error, Johnson argues that he received ineffective assistance of counsel. We disagree.

{¶25} A successful ineffective assistance claim requires proof that: (1) counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate

prejudice, Johnson must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. This Court need not address both *Strickland* prongs if the defendant has failed to prove either one. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

{¶26} Johnson argues that his trial counsel was ineffective because he: (1) failed to request a jury instruction on the castle doctrine, pursuant to R.C. 2901.09; (2) failed to object when the court explained the merger doctrine to the jury; and (3) referenced Johnson's prior convictions during voir dire. Contrary to Johnson's first argument, the record reflects that his counsel requested a jury instruction on the castle doctrine, pursuant to R.C. 2901.09. The trial court refused to issue the requested instruction because it was not warranted under the evidence. Johnson's counsel, therefore, was not ineffective on the basis that he failed to request the castle doctrine instruction.

{¶27} With regard to trial counsel's failure to object to the court's answer to the jury's question, we have already determined that Johnson was not prejudiced by the court's answer. Because Johnson cannot show that he was prejudiced by the court's answer, he cannot succeed on his second ineffective assistance of counsel claim. *See Ray* at ¶ 10. Likewise, we must conclude that Johnson cannot succeed on his third ineffective assistance of counsel claim. This Court has recognized that, in certain instances, trial counsel may make a strategic decision to inform the jury of a defendant's prior convictions. *See State v. Adams*, 9th Dist. Medina No. 13CA0008-M, 2013-Ohio-4258, ¶ 21; *State v. Gott*, 9th Dist. Lorain No. 93CA005560, 1993 WL 539595, *7-8 (Dec. 22, 1993). Well before trial, the State filed a notice of its intent to impeach Johnson with his prior convictions, should he choose to testify. Johnson did testify and

was cross-examined on his prior convictions. Additionally, Johnson presented numerous character witnesses to testify regarding his reputation, and the State cross-examined those witnesses with regard to Johnson's prior convictions. Given Johnson's choice to testify and to introduce character witnesses to speak to his reputation, his counsel's choice to "tak[e] the sting out of the prosecution's anticipated line of questioning would clearly constitute sound trial strategy." *Gott* at *8. Consequently, Johnson's trial counsel was not ineffective for introducing Johnson's prior record during voir dire. Johnson's third assignment of error is overruled.

### III

{¶28} Johnson's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____

BETH WHITMORE
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶29} I respectfully dissent. I would conclude that the trial court improperly instructed the jury regarding the merger doctrine and that the instruction was prejudicial. Except in rare cases involving the death penalty, sentencing issues remain within the sole providence of the trial court. Nevertheless, here, the trial court explained:

> [T]he merger doctrine is a person is accused of two separate offenses, okay, but there was really only one act that did these two offenses, do you follow me? So, therefore, the law says well, * * * the State can charge both of these offenses and the person can be found guilty of both of these offenses, but because there was only one act, you can only be sentenced on one of those offenses.

{¶30} The trial court's explanation that the State could charge, and the defendant could be found guilty of, multiple counts conveyed a message to the jury that their verdicts on the individual counts were immaterial at the end of the day because it was not particularly important whether Johnson was found guilty of one or both counts of felonious assault since he would only be sentenced on one. The explanation was especially confusing, given that there were two victims who suffered physical injuries in this case and only two counts of felonious assault. Accordingly, I believe that the trial court's instruction was improper and prejudicial.

{¶31} Moreover, unlike the majority, I do not believe that the trial court's purported "curative" instruction dispelled the prejudicial effect of the merger instruction. The trial court's subsequent comments did nothing to address the importance of the jury's consideration of each count independently, without consideration for any sentence that might be imposed.

{¶32} For the reasons above, I would sustain Johnson's second assignment of error, reverse his conviction, and remand the matter for a new trial.

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.