[Cite as *State v. Crosby*, 2015-Ohio-5176.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 15CA010724 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DONZELLE CROSBY | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 11CR082579 |

DECISION AND JOURNAL ENTRY

Dated: December 14, 2015

HENSAL, Presiding Judge.

{¶1}    Donzelle Crosby appeals his convictions in the Lorain County Court of Common Pleas for aggravated murder, murder, aggravated robbery, aggravated burglary, felonious assault, and tampering with evidence. For the following reason, this Court affirms.

I.

{¶2}    According to Michelle Neal, she used to allow Mr. Crosby to sell drugs out of her house in Lorain. On March 1, 2011, Mr. Crosby came to the house with a couple of other men. Ms. Neal told them that they could not stay, however, because she had company. About 45 minutes later, the men came back to the house, alleging that one of them had lost a cell phone inside it. After Ms. Neal's boyfriend let them enter, Mr. Crosby walked over to Ms. Neal's bedroom, which was on the main floor. Inside the bedroom, Jason Smith was playing cards with James Woods. He also had been selling drugs to the other people in the house. Ms. Neal testified that, when Mr. Crosby reached the bedroom, he told Mr. Smith to "give me all your

shit[.]" When Mr. Smith refused, Mr. Crosby shot him, then fled out the front door with the men who accompanied him. Mr. Smith chased after Mr. Crosby, but collapsed on the driveway outside the house. Ms. Neal called 911 and stayed with Mr. Smith until an ambulance arrived. Mr. Smith, nevertheless, died from his wounds.

{¶3} The Grand Jury indicted Mr. Crosby for aggravated murder, murder, aggravated robbery, aggravated burglary, felonious assault, and tampering with evidence. It included a death penalty specification, which the trial court dismissed after testing revealed that Mr. Crosby's I.Q. is in the 50s. A jury found Mr. Crosby guilty of the offenses and associated firearm specifications. The trial court, after merging many of the offenses, sentenced Mr. Crosby to life in prison with parole eligibility after 30 years. Mr. Crosby has appealed, assigning four errors. This Court has reordered the assignments of error for ease of consideration.

ASSIGNMENT OF ERROR II

WHETHER CONTRADICTIONS IN TESTIMONY WERE SO GREAT THAT THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE APPELLANT'S CONVICTIONS.

{¶4} Mr. Crosby argues that his convictions are not supported by sufficient evidence. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶5} Mr. Crosby argues that Ms. Neal's testimony conflicted with the testimony of two other people who witnessed the shooting. He notes that Ms. Neal testified that, at the time of the shooting, she was in her bedroom playing cards with Mr. Smith and James Wood. Mr. Wood, however, testified that only he and Mr. Smith were in the room playing cards and that Ms. Neal was not in the vicinity. One of Mr. Crosby's co-defendants, Jeremy Brown, also testified that the only people he saw in the bedroom were two men.

{¶6} Mr. Brown testified that he saw Mr. Crosby shoot Mr. Smith after demanding money from him. Ms. Neal also testified that she saw Mr. Crosby shoot Mr. Smith after he lied to gain access to her house and after he demanded Mr. Smith's possessions. Viewing their testimony in a light most favorable to the State, it was sufficient to establish the elements of aggravated murder, murder, aggravated robbery, aggravated burglary, and felonious assault. Mr. Crosby has not developed a sufficiency argument with respect to his tampering offense, and we will not construct one for him. *See* App.R. 16(A)(7). Mr. Crosby's second assignment of error is overruled.

ASSIGNMENT OF ERROR I

WHETHER APPELLANT'S CONVICTION'S WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THEY WERE BASED ON TWO EYEWITNESSES WITH TESTIMONY THAT WAS CONTRADICTED AND BOTH RECEIVING CONSIDERATION FOR THEIR TESTIMONY.

{¶7} Mr. Crosby next argues that his convictions are against the manifest weight of the evidence. If a defendant asserts that his convictions are against the manifest weight of the evidence

> [a]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶8} Mr. Crosby argues that the witnesses gave conflicting accounts of who was in the bedroom as well as Ms. Neal's whereabouts at the time of the shooting. He also argues that they were inconsistent about whether Mr. Smith gave Mr. Crosby any drugs or money in response to Mr. Crosby's demands and about whether Mr. Smith ran or crawled out of the house after Mr. Crosby. Mr. Crosby argues that Mr. Brown was not credible because he accepted a 12-year prison sentence for his role in the offenses, despite claiming that he did nothing wrong.

{¶9} Mr. Crosby notes that Ms. Neal was not charged with any offenses, even though she admittedly allowed drugs to be sold and used at her home. He also notes that several of the witnesses had gunshot residue on their hands and that many of them had been drinking or using drugs at the time of the shooting. He further notes that the coroner testified that Mr. Smith was in a defensive "flinching" position at the time he was shot, which none of the alleged eye witnesses recounted. According to Mr. Crosby, in light of the "highly conflicting evidence" and "wildly conflicting testimony" of the witnesses, his convictions are against the manifest weight of the evidence.

{¶10} It is the jury's province to take note of inconsistencies in the testimony of the witnesses and resolve or discount them accordingly. *State v. Sykes*, 9th Dist. Summit No. 25263, 2011-Ohio-293, ¶ 21. "Likewise, it is the jury's role to evaluate the credibility of the witnesses, and to determine what weight to give any inconsistencies in the[ir] testimony." *Id*., quoting *State*

*v. Gooden*, 9th Dist. Summit No. 24896, 2010-Ohio-1961, ¶ 30. "[A] jury is free to believe or reject the testimony of each witness * * *." *State v. Miles*, 9th Dist. Summit No. 26187, 2012-Ohio-2607, ¶ 24, quoting *State v. Rice*, 9th Dist. Summit No. 26116, 2012-Ohio-2174, ¶ 35.

{¶11} In this case, the jury observed each of the witnesses and determined that either Ms. Neal's or Mr. Brown's account of the shooting was credible, if not both of their testimony. "[A] verdict is not against the manifest weight of the evidence where the jury's resolution of credibility is reasonable and where the jury ultimately chose to believe the State's witnesses * * *." *State v. Brown*, 9th Dist. Summit No. 26490, 2013-Ohio-5112, ¶ 20. Upon review of the record, we conclude that, despite minor inconsistencies in the accounts of the witnesses, this is not the extraordinary case in which the jury clearly lost its way, resulting in a manifest miscarriage of justice. *Otten*, 33 Ohio App.3d at 340. Mr. Crosby's first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

WHETHER TRIAL COUNSEL WAS INEFFECTIVE WHEN IT FAILED TO OBJECT TO INADMISSIBLE EVIDENCE INCLUDING BRUTON TESTIMONY, WITNESS BOLSTERING, & HEARSAY EVIDENCE WHEN THE CASE FACTS WERE DEPENDENT ON EYEWITNESSES WITH CONFLICTING TESTIMONY.

{¶12} Mr. Crosby next argues that his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, Mr. Crosby must establish (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that but for his counsel's deficient performance the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the

syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). In addition, to establish prejudice, Mr. Crosby must show that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Id*. at 694.

{¶13} Mr. Crosby argues that his lawyer should have objected when a police sergeant, allegedly, bolstered the testimony of Ms. Neal, Mr. Brown, and the other individuals who were in Ms. Neal's house at the time of the shooting. According to the sergeant, after receiving statements from those witnesses, he went to Ms. Neal's house to see if they would have actually been able to see the things they claimed from their various vantage points.

{¶14} Mr. Crosby cites *State v. Pruett*, 8th Dist. Cuyahoga No. 101471, 2015-Ohio-1377, in support of his argument. In *Pruett*, a police officer testified that he had verified information provided by the victims. A detective also testified that, based on his investigation, he had no reason to doubt the victims. In actuality, neither had conducted any investigation beyond speaking to the defendant and the victims. *Id*. at ¶ 8. The Eighth District Court of Appeals determined that Mr. Pruett's counsel was ineffective for not objecting to the officers' testimony because it improperly bolstered the testimony of the victims. *Id*. at ¶ 15, 17; *see also State v. Dzelajlija*, 8th Dist. Cuyahoga No. 88805, 2007-Ohio-4050, ¶ 34-36 (concluding that police officer improperly testified that witnesses were being truthful when he interviewed them).

{¶15} The sergeant in this case did not testify that the other witnesses were being truthful. He merely stated that, after talking to them, he went to Ms. Neal's house to "check to see whether [he] could see the things that those individuals were reporting * * *." Unlike in

*Pruett*, it appears that he did, in fact, do additional investigation in an attempt to corroborate the witnesses' stories. He also did not reveal the results of his investigation. We, therefore, conclude that his testimony does not constitute improper bolstering under *Pruett*.

{¶16} Mr. Crosby also argues that the sergeant improperly testified about phone calls between Mr. Brown and Mr. Crosby because his testimony involved hearsay. The sergeant, however, did not testify about the content of any phone calls, he only verified that Mr. Crosby called Mr. Brown twice after the shooting. His testimony, therefore, did not constitute hearsay. *See* Evid. R. 801(C) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

{¶17} Mr. Crosby also argues that his lawyer should have objected to the sergeant's testimony about telephone call records because the actual records were not admitted into evidence. He has not provided any authority, however, to suggest that a witness cannot testify about telephone records unless the records are also admitted. *See* App.R. 16(A)(7).

{¶18} Mr. Crosby next argues that his lawyer failed to object to the sergeant's statement that Ms. Neal no longer looks like a drug addict. He alleges that the comment bolstered her testimony. The Ohio Supreme Court has held that an expert witness may not testify as to the veracity of a witness's statements. *State v. Boston*, 46 Ohio St.3d 108 (1989), syllabus, modified on other grounds by *State v. Dever*, 64 Ohio St.3d 401 (1992), paragraph one of the syllabus. Courts, however, have not prohibited witnesses from indirectly bolstering the testimony of other witnesses. *State v. Jones*, 2d Dist. Montgomery No. 26289, 2015-Ohio-4116, ¶ 92, quoting *State v. Cashin*, 10th Dist. Franklin No. 09AP-367, 2009-Ohio-6419, ¶ 20 ("[I]ndirect bolstering of a victim's credibility is not the same as the direct rendering of an opinion as to a victim's veracity

* * *.").  Accordingly, we cannot say that Mr. Crosby's counsel's performance was deficient for not objecting to the sergeant's statement.

{¶19}  Mr. Crosby also argues that his lawyer should have objected to a detective's testimony that he used secret techniques that he learned through his work with the fugitive task force to uncover that Mr. Crosby went to Blairsville, Pennsylvania after the shooting.  According to Mr. Crosby, the detective's testimony implied that this case was so important that the Department of Justice authorized the detective to use secret techniques to find him.  Upon review of the transcript, however, the detective's testimony was actually that members of task force are not permitted to disclose the tactics they use in any case.  Mr. Crosby's counsel was not ineffective for not objecting to the detective's explanation of the task force's work.

{¶20}  Mr. Crosby next argues that his counsel should have objected to the testimony of another woman who was inside the house at the time of the shooting.  According to Mr. Crosby, although the woman could not identify the shooter herself, she recounted statements that Ms. Neal made at the time of the shooting that identified Mr. Crosby as the shooter.  Mr. Crosby argues that "[t]his allowed the jury to infer that [the woman] knew [Mr.] Crosby was the shooter."

{¶21}  The woman testified that she saw a man in Ms. Neal's house who put out his arm and demanded money from Mr. Smith just before Mr. Smith was shot.  She testified that she heard Ms. Neal refer to the man as "Dollar."  The woman did not know Dollar's real identity, but other witnesses testified that "Dollar" was Mr. Crosby's nickname.  Upon review of the record, we conclude that, even if Mr. Crosby's lawyer had objected to the woman's testimony, her recounting that Ms. Neal identified the man as "Dollar" would fall under the present sense impression exception to the hearsay rule.  Evid.R. 803(1) ("Present sense impression.  A

statement describing or explaining an event or condition made while the declarant was perceiving the event or condition * * *.").  In addition, Mr. Crosby has not explained how the woman's testimony indicated that she knew he was the shooter.

**{¶22}** Mr. Crosby's final ineffective assistance of counsel argument is that his lawyer should have objected when Mr. Woods testified about statements that one of Mr. Crosby's accomplices made while Mr. Crosby and his accomplices were robbing him and Mr. Smith. According to Mr. Crosby, because the co-defendant did not testify, Mr. Woods's testimony violated his right to confrontation.

**{¶23}** In *State v. Amore*, 9th Dist. Lorain No. 03CA008281, 2004-Ohio-958, this Court recognized that the United States Supreme Court has held that it violates a defendant's right to confrontation if a confession by his co-defendant is admitted at trial and he is not able to cross-examine the co-defendant.  *Id*. at ¶ 17, citing *Bruton v. United States*, 391 U.S. 123, 132 (1968). This case is distinguishable because the alleged statements of Mr. Crosby's co-defendant did not involve a confession or admission.  Mr. Woods only testified that the co-defendant ordered him to "[g]et your money out [of] your pockets," which does not implicate *Bruton*.

**{¶24}** Upon review of the record, we conclude that Mr. Crosby has not established ineffective assistance of trial counsel.  His third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ABUSED ITS DISCRETION, AND/OR COUNSEL WAS INEFFECTIVE, WHEN IT LEARNED OF CROSBY'S 52 IQ, AND DID NOT ORDER A NEW COMPETENCY BASED ON THIS INFORMATION.

**{¶25}** Mr. Crosby's final argument is that the trial court should have reconsidered whether he was competent to stand trial after testing revealed that his I.Q. is only 52.  Revised Code Section 2945.37(B) provides that the court, the prosecutor, or the defendant may raise the

issue of the defendant's competence to stand trial. If the issue is raised before trial, the court "shall hold a hearing on the issue * * *." *Id.*

{¶26} At a pre-trial hearing on Mr. Crosby's motion for competency evaluation, Mr. Crosby's lawyer explained that Mr. Crosby's intelligence had "tested out to a 55." At a subsequent hearing on whether Mr. Crosby was competent to stand trial, the parties jointly submitted a report by Dr. Bob Stinson, which indicated that Mr. Crosby's I.Q. was "in the 50s." Following that hearing, the trial court determined that Mr. Crosby was competent to stand trial. A few months later, an evaluation regarding whether Mr. Crosby is intellectually disabled indicated that the result of the original I.Q. test had actually been 52.

{¶27} Mr. Crosby did not move for another competency hearing after receiving the evaluation with the correct I.Q. score. The question, therefore, is whether the trial court erred when it failed to schedule a new competency hearing sua sponte. Upon review of the record, we conclude that the fact that Mr. Crosby's I.Q. was actually a few points lower than previously thought was not "sufficient indicia of incompetence" to have required the court to conduct another competency hearing. *See State v. Berry*, 72 Ohio St.3d 354, 359 (1995); *see also Pate v. Robinson*, 383 U.S. 375, 385 (1966) ("Where the evidence raises a 'bona fide doubt' as to the defendant's competence to stand trial, the judge on his own motion must * * * conduct a sanity hearing * * *.").

{¶28} We note that Mr. Crosby's fourth assignment of error also alleges that his counsel was ineffective for not requesting a new competency evaluation. He has not developed an argument regarding that issue in his brief, however, and we will not develop one for him. *See* App.R. 16(A)(7). Mr. Crosby's fourth assignment of error is overruled.

III.

**{¶29}** Mr. Crosby's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JOHN D. TOTH, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.