[Cite as *State v. Adams*, 2017-Ohio-1178.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

TOVE ADAMS

    Appellant

C.A. No.     15CA010868

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    13CR087425

DECISION AND JOURNAL ENTRY

Dated: March 31, 2017

SCHAFER, Judge.

{¶1} Defendant-Appellant, Tove Adams, appeals his convictions in the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} Anthony Coats asked S.C. to attend his son's high school graduation with him. At the time, Adams and S.C. were in a relationship. S.C. had been friends with Anthony Coats for many years, but Adams believed S.C. and Mr. Coats were having an affair. When Mr. Coats dropped S.C. off at home, Adams exited the house, said "[i]s that that motherf * * * r?" as he walked passed S.C., and continued toward Mr. Coats' vehicle with his gun. As Adams approached Mr. Coats' automobile, he fired several shots. Mr. Coats attempted to drive away, but Adams chased after him and fired additional shots at the vehicle, striking Mr. Coats. Adams fled the scene and Mr. Coats died of a gunshot wound.

{¶3}    The Lorain County Grand Jury indicted Adams on the following eight counts in reference to the shooting death of Anthony Coats: (I) aggravated murder, in violation of R.C. 2903.01(A), with a firearm specification and a repeat violent offender specification; (II) murder in violation of R.C. 2903.02(A), with a firearm specification and a repeat violent offender specification; (III) murder in violation of R.C 2903.02(B), with a firearm specification and a repeat violent offender specification; (IV) felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, with a firearm specification and a repeat violent offender specification; (V) felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, with a firearm specification and a repeat violent offender specification; (VI) tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree with a firearm specification; (VII) having weapons while under disability in violation R.C. 2923.13(A)(2), a felony of the third degree; and (VIII) having weapons while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree.  Adams pleaded not guilty to all of the charges in the indictment and the matter proceeded through the pretrial process.

{¶4}    Prior to trial, the trial court granted Adams' motion to have the repeat violent offender specifications bifurcated.  The matter subsequently proceeded to a jury trial, with the exception of the specifications that were tried separately to the court.  At the conclusion of its presentation of evidence, the State dismissed Count VIII, the charge for having weapons while under disability in violation of R.C. 2923.13(A)(3).  After deliberations, the jury returned a not guilty verdict as to the aggravated murder charge, but guilty verdicts as to the remaining charges and the associated specifications.  The trial court then found Adams guilty on all the repeat violent offender specifications.  At the sentencing hearing, the trial court determined that counts

two through five were allied offenses. The trial court subsequently sentenced Adams to 37 years-to-life in prison.

{¶5} Adams filed this timely appeal, raising seven assignments of error for our review. As assignments of error I and II raise similar issues, we elect to consider them together.

II.

### Assignment of Error I

**[ ] Adams was deprived his constitutional right to a fair trial before an unbiased jury by the introduction of improper other acts evidence by the State in violation of U.S. Constitution Amendments V, VI, and XIV; Ohio Constitution Article I Sections 10 and 5; and Evidence Rule 404.**

### Assignment of Error II

**[ ] Adams was deprived of his constitutional right to a fair trial before an unbiased jury when the court failed to instruct the jury on the limited purpose for which the court admitted 404(B) evidence in violation of U.S. Constitution Amendments V, VI, and XIV; Ohio Constitution Article I Sections 10 and 5; and Evidence Rule 404.**

{¶6} In his first assignment of error, Adams contends that the trial court erred when it allowed testimony regarding his prior bad acts in violation of Evid.R. 404(B). In his second assignment of error, Adams contends that if the trial court did not err in allowing the testimony of other bad acts, then the trial court erred when it failed to give the jury an instruction limiting the purpose for which that testimony could be considered. We disagree on both points.

**A. Admissibility of Prior Bad Acts**

{¶7} "Trial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court." *State v. Morris*, 132 Ohio St.3d 337, 338, 2012-Ohio-2407, syllabus. As such, an appellate court will review such a decision under an abuse of discretion standard. *Id.* "The term

'abuse of discretion' connotes more than an error of law or judgement; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *Morris* at 14, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶8} In this case, Adams contends that his ex-girlfriend's testimony constitutes inadmissible other acts evidence. Specifically, his ex-girlfriend, S.C., testified about an incident that occurred between herself and Adams a few days before the shooting death of Mr. Coats. In her testimony, S.C. stated that she and Adams had an argument about her relationship with Mr. Coats and that Adams had grabbed her by her head and dragged her up the stairs in front of her daughter. As a result, S.C.'s daughter ran out of the house and asked a neighbor to call 9-1-1. S.C. stated that after Adams dragged her up the stairs, "he sat me on my bed and choked me and choked me and choked me." She further stated that she eventually passed out and now has a scar on her neck from the incident.

{¶9} Adams argues that the other acts evidence presented in S.C.'s testimony suggested that he was violent toward S.C., had violent reactions whenever Mr. Coats was mentioned, and that he was a bad person. The trial court, however, overruled Adams' objection to the above testimony, determining that the testimony was admissible both to show intent and purpose because the testimony supported the prosecution's argument that Adams acted on his anger toward Mr. Coats, as well as to show that the incident was not an accident. Specifically, the trial court determined that S.C.'s testimony showed why Adams "was out to get" Mr. Coats

and "that he had strong feelings about" Mr. Coats. The trial court further determined that the probative value of this information outweighed its prejudicial nature.

{¶10} R.C. 2945.59 states:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system of doing an act is material, an acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

Evid.R. 404(B) also concerns the admissibility of other acts evidence. That rule states, in pertinent part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). "'Evid.R. 404(B) is in accord with R.C. 2945.59 in that it precludes the admission of evidence of other crimes, wrongs, or acts offered to prove [propensity] * * * , but it does not preclude admission of that evidence for other purposes[.]'" *State v. Ross*, 9th Dist. Summit No. 26694, 2014-Ohio-2867, ¶ 51, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 25. The Supreme Court of Ohio has outlined a three-step analysis for considering the admissibility of other acts evidence:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid. R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403.

*Williams* at ¶ 20. The Supreme Court of Ohio has further stated that "relevant evidence, challenged as being outweighed by its prejudicial effects, should be viewed in a light most favorable to the proponent of the evidence maximizing its probative value and minimizing any prejudicial effect to one opposing admission." *State v. Frazier*, 73 Ohio St.3d 323, 333 (1995).

**{¶11}** Upon review of the record, we cannot conclude that the trial court abused its discretion. First, the other acts evidence in S.C.'s testimony was relevant to show Adam's intent and purpose for shooting and killing Mr. Coats. *See State v. Guerra*, 9th Dist. Lorain No. 12CA010188, 2013-Ohio-5367, ¶ 19 (concluding that testimony related to prior confrontations demonstrated, at a minimum, motive and intent because it demonstrated increasing hostility and provided a full picture of the context for the shooting). Second, the other acts evidence was elicited by the prosecution to show Adam's feelings toward Mr. Coats and his intent, plan, and motive in killing him. Third, viewing the other acts evidence in a light most favorable to the State, we cannot say that the trial court erred when it determined that its probative value outweighed any unfair prejudice toward Adams since it provided the jury with evidence of Adams' intent, plan, and motive and the immediate background circumstances of Mr. Coats' murder.

**{¶12}** Therefore, we overrule Adams' first assignment of error.

### B. Failure to Give Jury Instruction

**{¶13}** Pursuant to Evid.R. 105, "[w]hen evidence which is admissible * * * for one purpose but not admissible * * * for another purpose is admitted, the court, *upon request of a party*, shall restrict the evidence to its proper scope and instruct the jury accordingly." (Emphasis added.) However, in this case, Adams did not request a limiting instruction for the use of S.C.'s statements with regard to the incident that occurred between them a few days

before Mr. Coats murder.  Therefore, he has forfeited all but plain error.  *See State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 91.  Plain error may only be invoked where the following three elements exist:

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain.  To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights" * * * [and] affected the outcome of the trial.

(Internal citations omitted.)  *State v. Barnes*, 94 Ohio St.3d 21, 22, (2002).  Nonetheless, plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶14}  In this case, Adams failed to request a limiting instruction.  This Court has held "[a]bsent such request, the failure of the court to give a limiting instruction is not prejudicial error to the extent of constituting plain error."  *State v. Santiago*, 9th Dist. Medina No. 1882, 1990 WL 118852, * 2, citing *State v. Norman*, 7 Ohio App.3d 17, 21 (5th Dist.1982).  Moreover, although an instruction limiting the use of evidence was not given to the jury, we note that the trial court did admonish the jury with regard to other prior acts of Adams, stating that they could only be used for a limited purpose and that the jury was not to consider them to prove Adams' character or that he acted in conformity with that character.

{¶15}  Accordingly, we overrule Adams' second assignment of error.

### Assignment of Error III

**The court erred and deprived [Adams] of his constitutional right to a fair trial before an unbiased jury when it disallowed cross examination of Det. Larry Barbee regarding statements made to the detective by [S.C.] in contravention of Evid. R. 613 and in violation of U.S. Constitution Amendments V, VI, and XIV; Ohio Constitution Article I Sections 10 and 5.**

{¶16} In his third assignment of error, Adams contends that the trial court erred when it denied him the ability to cross-examine a detective regarding statements that S.C. made to him that were inconsistent with her trial testimony. We disagree.

{¶17} A trial court's decision regarding the admissibility of evidence will not be overturned absent a clear abuse of discretion and material prejudice to the defendant. *State v. Sales*, 9th Dist. Summit No. 25036, 2011-Ohio-2505, ¶ 22. An abuse of discretion denotes that the trial court's determination was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d 217 at 219 (1983).

{¶18} Evid.R. 613(B) governs the admissibility of extrinsic evidence regarding a witness's prior inconsistent statement. That rule allows for the introduction of such evidence when both of the following apply:

> (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
>
> (2) The subject matter of the statement is one of the following:
>
> (a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
>
> (b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);
>
> (c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

Evid.R. 613(B)(1). "'[I]f a witness admits making the conflicting statement, then extrinsic evidence of the prior statement is not admissible.'" *Sales* at ¶ 25, quoting *State v. Mulvey*, 7th Dist. Belmont No. 08 BE 31, 2009-Ohio-6756, ¶ 68. However, several appellate courts have recognized that if the witness states she cannot remember the prior statement, a lack of

recollection is treated the same as a denial, and the use of extrinsic impeachment evidence is permitted. *See State v. Reed*, 2d Dist. Montgomery No. 19674, 2003-Ohio-6536, ¶ 30; *State v. Allen*, 5th Dist. Stark No. 2012CA00196, 2013-Ohio-3715, ¶ 11; *State v. Lemons*, 11th Dist. Trumbull No. 2009-T-0032, 2010-Ohio-3807, ¶ 38-40.

{¶19} Nonetheless, even assuming that Adams has met the foundation requirements of Evid.R. 613(B)(1), S.C.'s inconsistent statements would only be admissible if they met the additional criteria outlined in Evid.R. 613(B)(2). In this case, S.C. testified and was subject to cross-examination. A review of the record shows that Adams' trial counsel attempted to challenge S.C.'s credibility based on statements she made to police during the investigation of this case that trial counsel claimed were inconsistent with her testimony at trial. The specific statements Adams' trial counsel attempted to question S.C. about were: (1) the direction Mr. Coats' automobile was facing at the time of the incident; (2) whether Mr. Coats' automobile pulled forward or backed away from the shooting; (3) whether Adams uttered a statement prior to the shooting or remained silent; (4) whether the driver's window of Mr. Coats' automobile was rolled up or down at the time of the shooting; and (5) whether all shots were fired at Mr. Coats' automobile or if one was fired at S.C. However, when given the opportunity to admit or deny the allegedly inconsistent statements she made to the detective, S.C. stated that she did not remember much of the interview because it had taken place just hours after Mr. Coats' murder. Adams' trial counsel subsequently attempted to refresh S.C.'s recollection of what she told the detective by giving her a copy of her statement to review. Nevertheless, S.C. stated that reviewing her statement did not refresh her recollection as to what she said to the detective.

{¶20} Consequently, Adams' trial counsel attempted to elicit testimony from the detective regarding S.C.'s allegedly inconsistent prior statements regarding how Mr. Coats'

automobile was parked at the time of the incident and whether or not Mr. Coats backed out of the driveway. Adams' trial counsel argued that the statements were necessary to impeach S.C. However, upon objection by the prosecution, the trial court determined that even if the statements were inconsistent, Adams was unable to show that the evidence he sought was a fact of consequence in the case. *See* Evid.R. 613(B)(2)(a). Specifically, the trial court determined that Adams had not presented any evidence explaining why backing out of a driveway or in what direction the automobile was headed was a fact of consequence "given what the angles were of the bullets in this case."

{¶21} Adams argues on appeal that the trial court erred in this determination because the extrinsic evidence that would be presented by admitting the allegedly inconsistent statements would be important to the jury when determining whether Adams wanted to kill Mr. Coats, if Adams took action toward killing Mr. Coats, and if Adams was acting in self-defense. Initially, we note that a review of the record shows that although Adams proffered as areas of potential questioning of the detective: (1) whether S.C. stated that Adams uttered a statement prior to the shooting; (2) whether S.C. stated that the driver's window of Mr. Coats' automobile was rolled up or down; and (3) whether S.C. stated all shots were fired at Mr. Coats' automobile or if one was fired at S.C., Adams did not attempt to elicit testimony from the detective regarding those topics. At the time of the proffer, the trial court recognized that those issues were not raised during the prosecution's case-in-chief and stated that it would allow Adams to call the detective during the defense's case-in-chief, as if on cross-examination, to explore certain limited areas if he was able to convince the court that it had made a mistake by not allowing certain questions. However, a review of the record shows that trial counsel did not assert any further argument on those points. Therefore, we decline to address the merits of Adams' argument since he did not

preserve those issues for appeal. *See State v. Jacobs*, 9th Dist. Summit No. 27545, 2015-Ohio-4353, ¶ 33 ("This Court has repeatedly noted that it will not sua sponte fashion an unraised plain error argument and then address it.")

{¶22} We now consider whether the trial court abused its discretion when it determined that Adams failed to present any evidence demonstrating how the issue of whether Mr. Coat's backed out of the driveway and in what direction Mr. Coats' automobile was headed was a fact of consequence "based upon the evidence that [was] heard" and "given what the angles were of the bullets in this case." Adams argued in the court below that Mr. Coats' operation of the automobile was a fact of consequence because it "created a danger" to Adams. However, Adams did not elaborate in what way it created a danger. A review of the record shows that the following evidence was heard prior to the trial court's determination: (1) S.C. stated that Adams would get angry whenever she mentioned Mr. Coats; (2) S.C. stated that Adams did not believe that she and Mr. Coats were just friends and that Adams had threatened to hurt Mr. Coats; (3) S.C. stated that after an argument concerning Mr. Coats, Adams had choked her; and (4) another witness, J.L., testified that about an hour and a half to two hours before the shooting, Adams told him he was having "girl troubles" and that "he had a pipe and he wasn't afraid delivering out." J.L. understood this to mean that Adams had a gun and wasn't afraid to use it.

{¶23} Although the trial court did not specify what the angles of the bullets were, a review of the record shows: (1) the photographs admitted into evidence reveal a shattered front driver's-side window, a shattered-out driver's-side rear "opera" window still intact with a hole in the center, a bullet hole in the top of the trunk, bullet fragments inside the trunk, and a bullet hole in the upper right-hand corner of the back license plate; (2) a detective testified that the hole in opera window was "consistent with a bullet going through and striking the headrest of the

driver's side headrest, driver's seat;" and (3) the coroner who performed Mr. Coats' autopsy testified that the gunshot entry wound in Mr. Coats' body was located on his back left shoulder and that the bullet travelled "about horizontal" through his body to his upper right back. As such, it was reasonable for the trial court to infer from the circumstantial evidence that the angle the bullets were shot came from the left-side and rear of the automobile.

**{¶24}** Therefore, in light of the testimony and evidence presented at trial, we cannot conclude that the trial court's determination was unreasonable, arbitrary, or unconscionable.

**{¶25}** Accordingly, Adams' third assignment of error is overruled.

### Assignment of Error IV

**The court violated [Adams'] rights under U.S. Constitution Amendments V, VI, and XIV; the Ohio Constitution Article I, Section 10 and Ohio hearsay law when it allowed improper testimony.**

**{¶26}** In his fourth assignment of error, Adams contends that the trial court erred when it allowed J.L. to give hearsay testimony about what Adams had told him with regard to his "girl trouble" and that "he had a pipe and he wasn't afraid delivering out." J.L. understood Adams' pipe comment to mean that Adams had a gun and was not afraid of using it.

**{¶27}** However, a review of the record shows that Adams did not raise a hearsay objection to J.L.'s testimony regarding Adams' statements about his "girl troubles" or that "he had a pipe and wasn't afraid delivering out." Accordingly, Adams has forfeited all but plain error on review. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, ¶ 72. Nevertheless, Adams does not make a plain error argument in his brief. "This Court has repeatedly noted that it will not sua sponte fashion an unraised plain error argument and then address it. *Jacobs*, 2015-Ohio-4353 at ¶ 33.

**{¶28}** Therefore, Adams' fourth assignment of error is overruled.

**Assignment of Error V**

**The prosecution violated [ ]Adams' constitutional rights under Article I, Section 10 of the Ohio Constitution, the Fifth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper argument that [misstated] law and misled the jury.**

{¶29} In his fifth assignment of error, Adams contends that the State committed prosecutorial misconduct by making several statements that were unfairly prejudicial to Adams during closing argument, thus denying him his right to a fair trial. Specifically, Adams argues that these allegedly improper statements amounted to plain error. We disagree.

{¶30} Adams points to several instances of alleged misconduct in his brief. First, Adams argues that the prosecutor used improper argument to unfairly bolster the State's case when she opined "who was right and wrong," when she made the following statements: (1) "But even to prevail on self-defense, you have to believe defendant's version of events and the State submits it's not credible. There's one witness out of all the witnesses put on the stand that has a motive to lie. None of the other witnesses have motive to lie;" and (2) "[S.C.]'s version of events makes sense. She didn't have a motive to lie, and she called 9-1-1 right after [the shooting] happened." Next, Adams argues that the prosecutor made a statement during her closing argument that was a "patent falsity" when she maintained, "[y]ou heard testimony that the two bullet fragments that were removed from the victim were shot from the firearm that [Adams] stashed at his sister's house." Conversely, Adams asserts that the forensic scientist from the Ohio Bureau of Criminal Investigation (BCI) testified that only one bullet fragment removed from Mr. Coats' body could be "associated" with the gun that the State entered into evidence.

{¶31} "The prosecutor is given considerable latitude in closing arguments." *State v. Reed*, 9th Dist. Wayne No. 12CA0051, 2013-Ohio-3970, ¶ 58. "A prosecutor may comment upon the testimony of witnesses and suggest the conclusions to be drawn." *State v. Elder*, 9th Dist. Summit Nos. 25217, 25259, 2011-Ohio-294, ¶ 22. "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266 at ¶ 140. "[T]he touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Further, "[t]his Court has stated that 'it is not prosecutorial misconduct to characterize a witness as a liar * * * if the evidence reasonably supports the characterization.'" *State v. Novotny*, 9th Dist. Summit No. 26526, 2013-Ohio-2321, ¶ 20, quoting *Akron v. McGuire*, 9th Dist. Summit No. 24638, 2009-Ohio-4661, ¶ 13.

{¶32} A review of the record shows that Adams failed to object to the alleged acts of prosecutorial misconduct. "When the defendant fails to object to the purported acts of prosecutorial misconduct, he waives all but plain error." *State v. Chapman*, 9th Dist. Lorain No. 07CA009161, 2008-Ohio-1452, ¶ 23, citing *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, ¶ 45. As noted earlier, pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error may only be invoked where the following three elements exist:

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights" * * * [and] affected the outcome of the trial.

(Internal citations omitted.) *Barnes*, 94 Ohio St.3d at 22. "As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of the trial court will not be reversed due to plain error unless the defendant has established that the outcome

of the trial clearly would have been different but for the alleged error." *State v. Veal*, 9th Dist. Summit No. 26005, 2012-Ohio-3555, ¶ 18. "[T]he issue is whether but for the prosecutor's misconduct the verdict would have been otherwise." *State v. Johnson*, 46 Ohio St.3d 96, 102 (1989). Accordingly, "we must review the prosecutor's 'closing argument in its entirety to determine whether prejudicial error occurred.'" *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 203, quoting *State v. Treesh*, 90 Ohio St.3d 460, 466 (2001). Nevertheless, "We will not deem a trial unfair if, in the context of the entire trial, it appears beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 121.

**{¶33}** Assuming without deciding that the prosecutor's statements were improper, we determine that they did not prejudicially affect Adams' substantial rights. A review of the record shows that these statements "did not permeate the state's argument" so as to deny Adams a fair trial. *Treesh* at 468. Moreover, Adams is unable to show that but for those comments, the outcome of his trial would have been different. The overwhelming evidence in this case indicates that Adams had strong feelings toward Mr. Coats that included anger and jealousy because he believed Mr. Coats and S.C. were having an affair. S.C. testified that as soon as she returned home from dinner with Mr. Coats, Adams walked past her and asked, "[i]s that that motherf * * * r?" before proceeding to Mr. Coats' automobile and firing three shots. S.C. further stated that as Mr. Coats attempted to drive away, Adams chased the car and continued to shoot at Mr. Coats. Adams then fled the scene and hid the murder weapon at his sister's house. Subsequently, four fired cartridge cases recovered from the scene, a bullet recovered from Mr. Coats' driver's seat, and a bullet jacket recovered from Mr. Coats' body were all determined to have been fired from Adams' weapon. Additionally, a swab of the handled areas for Adams'

weapon contained a DNA profile consistent with Adams, S.C., and at least one additional unknown individual. Further, the photographs admitted into evidence show: (1) a shattered front driver's-side window, a shattered-out driver's-side rear "opera" window still intact with a hole in the center, a bullet hole in the top of the trunk, bullet fragments inside the trunk, and a bullet hole in the upper right-hand corner of the back license plate; (2) detective testified that the hole in opera window was "consistent with a bullet going through and striking the headrest of the driver's side headrest, driver's seat;" and (3) the coroner who performed Mr. Coats' autopsy testified that the gunshot entry wound in Mr. Coats' body was located on his back left shoulder and that the bullet travelled "about horizontal" through his body to his upper right back. Accordingly, in the context of the entire trial, it is clear beyond a reasonable doubt that the jury would have found Adams guilty even without the alleged improper comments by the prosecutor during closing statements. *See La Mar* at ¶ 121 (stating that a trial will not be deemed unfair if, "in the context of the entire trial, it appears beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments.")

{¶34} Therefore, we conclude that the failure to exclude the challenged statements did not amount to plain error and we overrule Adams' fifth assignment of error.

### Assignment of Error VI

**[Adams] was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.**

{¶35} In his sixth assignment of error, Adams claims that his trial counsel was ineffective because he failed to request a limiting jury instruction, failed to object to the trial court's failure to provide a limiting instruction, and failed to object to statements made by the prosecution during closing arguments.

{¶36} In order to prevail on a claim of ineffective assistance of counsel, Adams "must establish (1) that his counsel's performance was deficient to the extent that 'counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment' and (2) that but for his counsel's deficient performance the result of the trial would have been different." *State v. Velez*, 9th Dist. Lorain No.13CA010518, 2015-Ohio-642, ¶ 18, quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This court need not address both prongs of the *Strickland* test if it should find Adams failed to prove either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10. A trial counsel's performance will not be deemed ineffective unless it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), at paragraph two of the syllabus. Further, there exists a strong presumption of the adequacy of counsel's performance and that counsel's actions were sound trial tactics. *State v. Hoehn*, 9th Dist. Medina No. 03CA0076-M, 2004-Ohio-1419, ¶ 45. Moreover, "debatable trial tactics do not give rise to a claim of ineffective assistance of counsel." *Id.*, citing *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980).

{¶37} Adams argues that his trial counsel's failure to request a limiting instruction, failure to object to the trial court's failure to provide a limiting instruction, failure to object to statements made by the prosecution during closing arguments combine to show "that there was no adversarial process in this trial." However, "[t]his Court has held that 'the decision not to request a limiting instruction is a matter of trial strategy and does not establish ineffective assistance of counsel." *State v. Bradford*, 9th Dist. Summit No. 22441, 2005-Ohio-5804, ¶ 28, quoting *State v. Fields*, 9th Dist. Wayne No. 99CA0062, 2000 WL 1124071, *7 (Aug. 9, 2000). Additionally, "this Court has consistently held that 'trial counsel's failure to make objections falls within the realm of trial tactics and does not establish ineffective assistance of counsel.'"

*Id.* at ¶ 27, quoting State *v. Taylor*, 9th Dist. Lorain No. 01CA007945, 2002-Ohio-6992, ¶ 76. "Strategic trial decisions are left to the deference of trial counsel and are not to be second-guessed by appellate courts." *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 14, citing *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

{¶38} After careful review of the record, we conclude that Adams has failed to meet his burden of establishing that trial counsel's failure to request a limiting instruction and failures to object amounted to ineffective assistance of counsel.

{¶39} Therefore, we overrule Adams' sixth assignment of error.

### Assignment of Error VII

**The cumulative impact of errors reflected in this record amounted to a denial of due process and a fair trial.**

{¶40} In his seventh assignment of error, Adams contends that even if this Court concludes that none of the above assigned errors should be sustained, that their cumulative impact on Adams' rights warrants reversal of his convictions. However, as indicated by our resolution of the previous assignments of error, Adams has not identified a single instance of error. As such, the cumulative error doctrine does not apply and does not support the reversal of Adams' convictions. *See State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 132 ("[T]he doctrine of cumulative error is not applicable to the present case, because there were no multiple errors.") Therefore, we overrule Adams' seventh assignment of error.

III.

{¶41} Having overruled all of Adams' assignments of error, we affirm the judgment of the Summit County Court of Common Pleas.

Judgement affirmed.

19

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

KREIG BRUSNAHAN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.