[Cite as *State v. Puryear*, 2019-Ohio-3979.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 29155 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JERRY PURYEAR | AKRON MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. 17TRC20701 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2019

TEODOSIO, Presiding Judge.

{¶1}    Appellant, Jerry Puryear, appeals from his convictions in the Akron Municipal Court. This Court affirms.

I.

{¶2}    Mr. Puryear was pulled over by an Ohio State Highway Patrol ("OSHP") trooper for traveling 91 miles per hour in a 60-mile-per-hour zone. According to the trooper, Mr. Puryear began slowing down to 30 miles per hour, but was slow to stop. After one minute and twenty seconds, Mr. Puryear finally stopped on the left-hand side of the road, but his vehicle remained partially in the roadway. The trooper smelled the odor of alcohol coming from inside the vehicle, and noticed Mr. Puryear was chewing gum and had red, glossy eyes. Mr. Puryear admitted to drinking one beer. When asked for his identification, Mr. Puryear kept offering the trooper his work identification instead of his driver's license. Mr. Puryear's speech was not slurred, but the trooper recalled it as being "slow and low." After Mr. Puryear performed poorly

on three different field sobriety tests, he was arrested. The trooper transported him to the police station, where Mr. Puryear refused to take a breathalyzer test.

{¶3} Mr. Puryear was charged with one count of operating a vehicle under the influence of alcohol ("OVI") under R.C. 4511.19(A)(1)(a), one count of OVI under R.C. 4511.19(A)(2) (OVI with a prior OVI conviction in the past twenty years and refusal to take a chemical test), and one count of speeding. After a jury trial, Mr. Puryear was convicted of both OVI charges. The trial court also found him guilty of speeding. The court sentenced him to 180 days in jail, suspended 170 days, and ordered him to complete ten days in the multiple offender program. The court placed him on probation for six months and ordered him to pay fines and court costs.

{¶4} Mr. Puryear now appeals from his convictions and raises three assignments of error for this Court's review.

{¶5} For ease of analysis, we have reorganized Mr. Puryear's assignments of error.

II.

**ASSIGNMENT OF ERROR TWO**

DEFENDANT'S CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE

{¶6} In his second assignment of error, Mr. Puryear claims that his convictions are not supported by sufficient evidence. Although he states the relevant law with respect to this Court's standard of review for challenges to the sufficiency of the evidence, he fails to make or develop any specific argument in support of his position. *See* App.R. 12(A)(2) and 16(A)(7). This Court declines to construct a sufficiency argument on Mr. Puryear's behalf. *See State v. Crosby*, 9th Dist. Lorain No. 15CA010724, 2015-Ohio-5176, ¶ 6; *State v. Orsik*, 9th Dist. Lorain No. 11CA010097, 2012-Ohio-4331, ¶ 10; *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998

WL 224934, \*8 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out.").

{¶7} Mr. Puryear's second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶8} In his third assignment of error, Mr. Puryear argues that his convictions are against the manifest weight of the evidence for a variety of reasons. We disagree.

{¶9} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶10} Mr. Puryear was convicted of one count of OVI under R.C. 4511.19(A)(1)(a), which states: "No person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * the person is under the influence of alcohol * * *." He was also convicted of one count of OVI under R.C. 4511.19(A)(2), which states:

No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or any other equivalent offense shall do both of the following:

(a) Operate any vehicle * * * within this state while under the influence of alcohol * * *;

(b) Subsequent to being arrested for operating the vehicle * * * as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

"'Under the influence' has been defined as '[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle.'" *Akron v. Foos*, 9th Dist. Summit No. 28086, 2016-Ohio-8441, ¶ 5, quoting *State v. Adams*, 9th Dist. Medina No. 13CA0008-M, 2013-Ohio-4258, ¶ 25, quoting *State v. Smith*, 5th Dist. Licking No. 09-CA-42, 2010-Ohio-1232, ¶ 92, quoting *Toledo v. Starks*, 25 Ohio App.2d 162, 166 (6th Dist.1971). Mr. Puryear was also convicted of speeding, but he does not challenge his speeding conviction on appeal, and we will likewise not address it.

{¶11} OSHP Trooper Robert VanDyke testified that, on December 6, 2017, he was on duty while stationary on I-277 in Akron, checking vehicle speeds with an LTI laser device. He clocked Mr. Puryear's vehicle traveling 91 miles per hour in a 60-mile-per-hour zone. The trooper activated his siren and overhead lights and attempted to stop Mr. Puryear's vehicle. The trooper did not see any brake lights, however, and Mr. Puryear did not stop. The trooper hit his horn, and Mr. Puryear began slowing down to 30 miles per hour. The trooper testified that it is not normal for vehicles to be slow to stop, so "bells and whistles" began to go off for him. Mr.

Puryear eventually pulled over and stopped on the left-hand side of the road after being pursued for one minute and twenty seconds, but his vehicle remained partially in the roadway. The trooper testified that it was not safe to conduct the traffic stop there, as a median wall was on the driver side of the vehicle and the trooper would have to stand next to 60-mile-per-hour traffic on the passenger side.

{¶12} The trooper approached the vehicle and testified that he could smell "the odor of alcohol emitting from the vehicle." He could not tell if it was coming from Mr. Puryear's breath, however, because "he had a big chowing in motion in his mouth like he just jammed some new gum into his mouth[,]" and an open pack of gum was visible on the front passenger seat. The trooper testified that, in his experience, people put gum or Tic Tacs in their mouth to cover up the odor of alcohol while also "tak[ing] forever to stop." He also observed that Mr. Puryear had red, glossy eyes. The trooper asked if he had been drinking today, and Mr. Puryear replied, "Yes. One beer." When asked why he did not stop, Mr. Puryear said he was trying to rush home to his wife, which the trooper testified did not answer the question he asked. When asked for his identification, Mr. Puryear kept trying to give the trooper his work identification. On cross-examination, the trooper testified that Mr. Puryear's speech was not slurred, but was "slow and low." The trooper secured Mr. Puryear in his cruiser and personally moved Mr. Puryear's vehicle to the safer, right-hand side of the road. After moving his cruiser as well, he turned off the front cruiser lights and administered three field sobriety tests to Mr. Puryear.

{¶13} Based on his observations as to Mr. Puryear's driving, his observations when he approached the vehicle, and his observations during the field sobriety tests, Trooper VanDyke testified that he believed Mr. Puryear had consumed more than one beer and "was going to be over the legal limit of .08." The trooper arrested Mr. Puryear, read him the BMV 2255 form—

which explains the consequences for a refusal to submit to chemical testing—and transported him to the Springfield Police Department for a breathalyzer test, which Mr. Puryear ultimately refused to take.

{¶14} Mr. Puryear first argues that the field sobriety tests were biased and prejudiced because they were not administered in a manner consistent with National Highway Traffic Safety Administration ("NHTSA") standards. We note that Mr. Puryear never filed a motion to suppress in this case challenging the administration of the field sobriety tests as noncompliant with NHTSA standards. Because these arguments were never presented to the trial court for consideration, Mr. Puryear has forfeited his opportunity to now argue them on appeal. *See State v. Walters*, 9th Dist. Medina No. 11CA0039-M, 2012-Ohio-2429, ¶ 6, citing *State v. Shindler*, 70 Ohio St.3d 54, 58 (1994).

{¶15} Mr. Puryear further argues that his convictions are against the manifest weight of the evidence because certain indicia of intoxication observed by the trooper in this case were not actually indicative of impairment. He argues that there are no laws requiring a motorist to pull over in a certain amount of time or on a certain side of the road, and his decision to slow down and take eighty seconds before pulling over on the left side of the road is not an indicator of impairment. He further argues that the odor of alcohol emitting from a vehicle is not an indicator of how much alcohol someone has consumed, how recently it was consumed, or whether the odor is actually from the consumption of alcohol. Regarding his red, glossy eyes, Mr. Puryear argues that the trooper noticed the odor of alcohol, heard him admit to drinking one beer, and simply "assume[d] the red, bloodshot eyes were from his alcohol consumption."

{¶16} We find no merit in any of these arguments. In determining whether a defendant was under the influence of alcohol, the jury may properly consider evidence of his appearance

and behavior, including his ability to perceive, make judgments, coordinate movements, and safely operate a vehicle. *See State v. Moine*, 72 Ohio App.3d 584, 586-587 (9th Dist.1991). Moreover, this Court has stated:

> [I]n [OVI] prosecutions, the state is not required to establish that a defendant was actually impaired while driving, but rather, need only show an impaired driving ability. * * * "[T]o prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired." * * * Furthermore, "[v]irtually any lay witness, without special qualifications, may testify as to whether or not an individual is intoxicated."

*State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 6, quoting *State v. Peters*, 9th Dist. Wayne No. 08CA0009, 2008-Ohio-6940, ¶ 5.

{¶17} Mr. Puryear also argues that his speech was not slurred, stuttered, or argumentative. However, "[w]hile slurred speech is one of the classic indicia of intoxication, it is not a prerequisite to a reasonable judgment that a person is under the influence." *Akron v. Smith*, 9th Dist. Summit No. 21519, 2003-Ohio-5773, ¶ 16.

{¶18} Upon review of the record, we cannot say that Mr. Puryear's OVI convictions are against the manifest weight of the evidence. Evidence of Mr. Puryear's poor performance on the field sobriety tests was not the only evidence introduced against him at trial. In fact, "'[f]ield sobriety tests are not even a necessary factor in order to arrest or convict for [OVI]. Otherwise, those with certain medical conditions would have a free pass to drive drunk or under the influence of a drug of abuse.'" *State v. Strebler*, 9th Dist. Summit No. 23003, 2006-Ohio-5711, ¶ 17, quoting *State v. Stephenson*, 4th Dist. Lawrence No. 05CA30, 2006-Ohio-2563, ¶ 19, quoting *State v. Rouse*, 7th Dist. Belmont No. 04 BE 53, 2005-Ohio-6328, ¶ 15. Our review of the record reveals that, even without the field sobriety test results, overwhelming evidence was presented from which the jury could have concluded Mr. Puryear operated his vehicle while

under the influence of alcohol. *See State v. Miracle*, 12th Dist. Butler Nos. CA2003-11-275 and CA2003-11-283, 2004-Ohio-7137, ¶ 35. Trooper VanDyke testified that he clocked Mr. Puryear driving 31 miles per hour over the posted speed limit. The trooper attempted to pull him over, but Mr. Puryear kept driving for another minute and twenty seconds before eventually slowing down to a stop. Mr. Puryear stopped his car in a dangerous location and was still partially in the roadway. The trooper smelled the odor of alcohol coming from inside of the vehicle and noticed Mr. Puryear was chewing gum. Mr. Puryear had red, glossy eyes, his speech was slow and low, and he admitted to drinking one beer. Instead of presenting his driver's license to the trooper, Mr. Puryear repeatedly offered his work identification instead.

{¶19} "'[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "[T]he jury is free to believe or disbelieve any, or all, of the testimony from each witness." *Haydon* at ¶ 28. The jury is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. This Court has consistently held that "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13.

{¶20} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witness, we cannot conclude that the jury, in resolving any conflicts in the evidence, clearly lost its way and created a manifest miscarriage of

justice. *See Otten* at 340. Moreover, Mr. Puryear has not demonstrated how this is an exceptional case where the evidence presented weighs heavily in his favor and against conviction. *See Thompkins* at 387.

{¶21} Mr. Puryear's third assignment of error is overruled.

## ASSIGNMENT OF ERROR ONE

THE STATE COMMITTED PROSECUTORIAL MISCONDUCT WHEN IT VIOLATED THE DEFENDANT'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS.

{¶22} In his first assignment of error, Mr. Puryear argues that the prosecutor engaged in misconduct during her closing argument by improperly referencing Mr. Puryear's decision to exercise his constitutional right to remain silent after being arrested. We disagree.

{¶23} Prosecutors are given considerable latitude in closing arguments. *State v. Adams*, 9th Dist. Lorain No. 15CA010868, 2017-Ohio-1178, ¶ 31. "A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). Thus, "[t]he test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140. "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6. In other words, "[t]he defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him." *State v. Moreland*, 9th Dist. Summit No. 27910, 2016-Ohio-7588, ¶ 22. "A reviewing court is to consider the trial record as a whole, and is to ignore harmless errors 'including most constitutional violations.'" *State v. Overholt*, 9th Dist. Medina No. 02CA0108-M, 2003-Ohio-3500, ¶ 46, quoting *State v. Lott*, 51 Ohio St.3d 160, 166 (1990).

"The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Diar* at ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶24} Mr. Puryear challenges several remarks made by the prosecutor in her closing argument, including:

> (1) "So perhaps we would have more information had he been more agreeable to answer some questions, but that was after he was under arrest. Maybe not so much in the mood to answer questions anymore."

> (2) "He didn't want to answer questions that night."

Defense counsel objected at trial, arguing "[e]veryone has the right to remain silent and you can't criticize someone for invoking their constitutional right[,]" but the trial court overruled the objection. Mr. Puryear also challenges a supposed third remark, arguing that the prosecutor "claimed that the Defendant is not 'allowed' to refuse to answer questions." He offers no citation to the record for this remark, however, and our review of the trial transcript reveals no such claim made by the prosecutor. *See* App.R. 16(A)(7). We will therefore limit our analysis to addressing the first two remarks.

{¶25} Mr. Puryear argues that the prosecutor's statements: (1) violated his constitutional right against self-incrimination; and (2) implied that he should be convicted for exercising his constitutional right. A defendant's right to remain silent under *Miranda* carries with it an implicit assurance that his silence will not be used against him. *State v. Harris*, 9th Dist. Lorain No. 11CA009991, 2012-Ohio-2973, ¶ 5, citing *Doyle v. Ohio*, 426 U.S. 610, 618 (1976); *Miranda v. Arizona*, 384 U.S. 436 (1966). Nevertheless, the United States Supreme Court has explained:

> Where the prosecutor on [her] own initiative asks the jury to draw an adverse inference from a defendant's silence, * * * the privilege against compulsory self-incrimination is violated. But[,] where * * * the prosecutor's reference to the

> defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, * * * there is no violation of the privilege.

*United States v. Robinson*, 485 U.S. 25, 32 (1988).

**{¶26}** When viewed in the context of the entire trial, it is apparent that the prosecutor's rebuttal remarks were made in direct response to comments made by defense counsel during his closing argument, as well as to testimony introduced at trial without objection. Several of defense counsel's questions to the trooper on cross-examination focused on why the trooper did not give Mr. Puryear a chance to answer certain questions during the traffic stop and why he interrupted Mr. Puryear instead of allowing him to fully answer some questions. Counsel further questioned the trooper regarding potential, alternative explanations for the indicators observed by the trooper, which the trooper never asked Mr. Puryear about, such as: (1) red eyes potentially caused by being tired, irritated, staring at a computer screen all day, smoke, viral infections, sickness, allergies, dryness, low blood sugar, or wearing contacts; and (2) nystagmus potentially caused by hypertension, eye straining, exposure to nicotine, use of antihistamines, strobe lights, flashing lights, cars "whizzing by," electronic billboard lights, wind, salt "kicked up" by passing cars, or dust. Counsel also directed many questions to the trooper inquiring why he never asked Mr. Puryear whether he worked that day, how much he had to eat, how much he slept, what shift he works, how much alcohol he consumed, how soon before the traffic stop he had consumed alcohol, and what medications he was on, if any.

**{¶27}** On re-direct examination, the prosecutor responded to this line of questioning as to what was *not* asked of Mr. Puryear, and she added, "Did you ask him where he had been drinking that day?" The trooper testified that he did ask that question, but it was after Mr. Puryear was *Mirandized* and handcuffed, and Mr. Puryear did not give an answer. Defense counsel never objected to this question or to the trooper's answer.

{¶28} Moreover, the prosecutor did not comment on Mr. Puryear's post-arrest silence in her initial closing argument. During his closing argument, however, defense counsel told the jury that the case was "full of reasonable doubt" and he proceeded to list "the lack of things * * * we'd all like to see to show impairment[,]" which included: "When did they last eat? How much did they have to sleep? * * * Were they on any medication?" He then proposed the following question to the jury: "You have answer[s] to any of those questions that lead you to proof beyond a reasonable doubt[?]"

{¶29} In her rebuttal thereafter, the prosecutor responded directly to those closing remarks by first stating that defense counsel "just told you that we don't know the answer to some questions." She then reiterated defense counsel's comments about eating and medication, and suggested that no one knows the answers to these questions because Mr. Puryear was "maybe not so much in the mood to answer questions" while under arrest. She further attempted to discredit any criticism aimed at the trooper for not affording Mr. Puryear the "opportunity to tell some story" while the two men were in an unsafe location on the side of the road. She again responded to defense counsel's closing remarks and stated:

> So, no, we don't know how much food he had or when his last meal was, but when [the trooper] asks, "Where were (sic) you been drinking," [Mr. Puryear] didn't want to answer that question, so now he doesn't get to say, "We don't know the answer to certain questions." He didn't want to answer questions that night.

The prosecutor also, in fact, reminded the jury that Mr. Puryear had the right to remain silent when she stated: "Once he's read his Miranda rights, you have the right to remain silent. Anything you say can and will be used against you. He does not have to answer any more questions. That's his right, but he doesn't then get to stand here today and tell you, 'Well, we don't know the answer to these questions.'"

**{¶30}** We conclude that the prosecutor's rebuttal remarks in this particular case, when considered within the context of the entire trial, were not improper, but were instead made in fair response to defense counsel's closing argument, and Mr. Puryear's constitutional rights were therefore not violated. *See Robinson*, 485 U.S. at 32.

**{¶31}** Even assuming arguendo that the prosecutor's remarks were improper, we would nonetheless determine that they did not prejudicially affect Mr. Puryear's substantial rights. A review of the record shows that these statements "did not permeate the state's argument" so as to deny Mr. Puryear a fair trial. *See Adams*, 2017-Ohio-1178, at ¶ 33, citing *State v. Treesh*, 90 Ohio St.3d 460, 468 (2001). Mr. Puryear has also failed to show that but for those comments, the outcome of his trial would have been different. *See id.* "We recognize that 'it is not enough that there be sufficient other evidence to sustain a conviction in order to excuse [a prosecutor's] improper remarks. Instead, it must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty.'" *State v. Kirby*, 9th Dist. Summit No. 23814, 2008-Ohio-3107, ¶ 31, quoting *Smith*, 14 Ohio St.3d at 15. The State introduced overwhelming evidence against Mr. Puryear at trial, including Trooper VanDyke's testimony and the dash cam video of the incident, and we conclude that it is clear beyond a reasonable doubt that the jury would have found him guilty of OVI even without the alleged improper comments. *See id.*

**{¶32}** Mr. Puryear's first assignment of error is overruled.

III.

**{¶33}** Mr. Puryear's first, second, and third assignments of error are overruled. The judgment of the Akron Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶34} I respectfully concur in judgment only as I would address Puryear's second assignment of error on the merits and conclude that the evidence presented at trial, when construed in the light most favorable to the City, was sufficient to sustain his convictions. Even if Puryear has not fleshed out his argument in support of his sufficiency challenge, this Court can

conduct a basic review of whether the City presented evidence on each element of the offenses for which he was convicted. *See generally State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Moreover, with respect to how the sufficiency of the evidence relates to a manifest weight challenge, this Court has recognized that "[i]nasmuch as a court cannot weigh the evidence unless there is evidence to weigh," we must consider the sufficiency of the evidence first. *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, *Whitaker v. M.T. Automotive Inc.*, 9th Dist. Summit No. 21836, 2007-Ohio-7057, ¶ 13.

**{¶35}** In regard to Puryear's first assignment of error, I would simply conclude that, under the circumstances of this case, Puryear was not prejudiced by the City's comments during closing argument.

APPEARANCES:

DONALD J. MALARCIK, Attorney at Law, for Appellant.

EVE V. BELVANCE, Director of Law, and BRIAN D. BREMER, Assistant Director of Law, for Appellee.